**UNITED STATES of America, Appellee,**

v.

**Mohammad Wazir KHAN, Defendant–Appellant.**

**No. 90, Docket 89–1429.**

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 1990.

Decided Dec. 10, 1990.

**1102**

Georgia J. Hinde, New York City (Vivian Shevitz, New York City, of counsel), for defendant-appellant.

Ira Belkin, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., JoAnn M. Navickas, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before FEINBERG and CARDAMONE, Circuit Judges, and CABRANES, District Judge *.

CARDAMONE, Circuit Judge:

Following his plea of guilty to one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. § 846, Mohammad Wazir Khan ap-

peals a judgment from the Eastern District of New York (Dearie, J.) sentencing him to 108 months in prison and three years of supervised release. Prior to Khan's guilty plea, he and the U.S. Attorney's office had entered into a cooperation agreement which provided if Khan "made a good faith effort to provide substantial assistance" to the government, then the government would move at sentencing for a downward departure. 18 U.S.C. § 3553(e); United States Sentencing Commission, *Guidelines Manual,* § 5K1.1 (1989) (Guidelines).

When Khan was sentenced the prosecutor did not make a § 5K1.1 motion for downward departure. On appeal, Khan argues that the prosecutor was required to respond to the defendant's suggestion that the prosecutor's decision was made in bad faith, and that he was entitled to a hearing on this issue, even though defense counsel did not allege bad faith at sentencing. This is not the sort of situation where all a defendant need do is knock on the hearing room door, and it will automatically open to him. A defendant must seek the government's answer in order to receive it—a hearing is not granted unless the district court has sufficient information to place the issue of the prosecutor's good faith reasonably in dispute.

Our tasks are to decide what threshold showing of bad faith a defendant must make before being entitled to judicial review of a prosecutor's refusal to move, and also to determine whether a district court is empowered to depart downwardly pursuant to § 5K2.0, notwithstanding the prosecutor's refusal to move under § 5K1.1. Before beginning analysis of these two questions, we discuss briefly the facts that led to this appeal.

## BACKGROUND

### A. *The Narcotics Transaction*

In August 1988 the U.S. Drug Enforcement Administration (DEA) was investigating a group of Pakistani heroin traffickers

* Honorable José A. Cabranes, United States District Court Judge for the District of Connecticut, sitting by designation.

with ties in the United States. Pursuant to the Pakistanis' instructions, a DEA confidential informant met the defendant on August 25, 1988 at a Manhattan restaurant and negotiated Khan's purchase of a kilogram of heroin from the informant. Following the meeting, in a series of tape-recorded telephone conversations with the informant that continued into the fall, Khan discussed purchasing this heroin. Defendant was arrested on October 14, 1988, after a package of sham heroin was delivered by the informant to him at his apartment. Khan was indicted on October 27, 1988 on charges of conspiracy and attempt to distribute heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), and was also charged with three counts of using a telephone in furtherance of a narcotics transaction in violation of 21 U.S.C. § 843.

## B. *The Plea Agreement*

After indictment Khan indicated through his attorney that he was willing to plead guilty and cooperate. Ironically, at the time Khan purchased the heroin, he was supposed to be acting as an informant pursuant to a prior cooperation agreement that resulted from his arrest in December 1986 for participating in a heroin sale to a confidential informant in the Southern District. Khan had pled guilty to charges stemming from this prior arrest, had entered into a cooperation agreement, and had been sentenced to a five year term of probation. Defendant continued acting ostensibly as an undercover informant up to the time he committed the present 1988 offense.

Although the government knew Khan had already strayed once, it sought to have his cooperation because of his known ties to other heroin traffickers, and so it entered into a second cooperation agreement with him, the one at issue in this case. Under the terms of this second cooperation agreement, Khan agreed to plead guilty in the 1988 case to one heroin count in satisfaction of all charges. He further promised to disclose information truthfully, cooperate fully in the government's investigations, and testify regarding any matter or

persons the government requested. The parties then agreed that

[i]f this Office determines that MOHAMMAD WAZIR KHAN has made a good faith effort to provide substantial assistance to agents of the DEA and other law enforcement agencies, this Office, pursuant to the Sentencing Reform Act of 1984, will file a motion with the sentencing court setting forth the nature and extent of his cooperation with this Office, including its investigative and prosecutive value, truthfulness, completeness and accuracy. In this connection, it is understood that this Office's determination of whether MOHAMMAD WAZIR KHAN has made a good faith effort to provide substantial assistance, and this Office's assessment of the value, truthfulness, completeness and accuracy of the cooperation shall be binding upon him.

The parties also agreed that, regardless of defendant's cooperation efforts, "[i]n addition, this Office will inform the sentencing court of the nature and extent of MOHAMMAD WAZIR KHAN's conduct and activities with respect to this case and all other information in its possession relevant to sentencing."

Once these terms had been agreed to, Khan pled guilty to the present offense on February 2, 1989. Prior to his scheduled sentencing set for July 21, 1989 the government informed defense counsel that it believed Khan had failed to live up to his plea agreement, and that the government would make no motion pursuant to § 5K1.1 to permit the court to sentence Khan below the Guidelines range. Defense counsel acknowledged that the government had "quite a while ago made me understand that the proceedings, discussions with my client were not going well." Khan's sentencing was then postponed until August 2, at which time counsel requested an adjournment of sentencing to consider a motion to withdraw Khan's guilty plea.

A week later, defense counsel advised the court that Khan did not wish to withdraw his guilty plea, but instead sought a hearing "to enable the court to decide the disputed issues of fact concerning the na-

ture and extent (or lack thereof) of Mr. Khan's offerings to Government agents." Khan acknowledged that "it is the Government who has discretion to move for a departure," but asserted that "there are nonetheless important questions here." Defense counsel did not elaborate on the nature of Khan's "offerings," merely stating that Khan understood that he was to act in good-faith; counsel insisted that Khan had made good faith efforts to provide the government with substantial information.

The government denied there was a right to such hearing. It argued, relying on *United States v. Huerta*, 878 F.2d 89 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990), that the decision whether to move for a downward departure lay "entirely within the government's discretion," and that Khan's request should be denied as an attempt to circumvent established law.

At the sentencing on August 18, 1989 defense counsel renewed his request for "a hearing of sorts *in camera* ... to make a determination based on the proffer of the assistant and/or the agents that, in fact, they acted in good faith." Defense counsel then stated: "I suppose by saying that I am saying that they acted in bad faith, but I don't really mean that." Counsel continued that his client had advised him that he told the agents all he knew and that Khan had acted in good faith in providing the government with information.

The district court found defendant had made no showing that the government had acted in bad faith by refusing to move for downward departure. Specifically, it stated: "I don't think merely by calling into question the government's good faith, the court should properly, without any indication that they've acted in bad faith, call the government to task so to speak, in an *in camera* setting or in any other context." Judge Dearie added "if the government could be seen to have been acting in bad faith in a given case, I think that [U.S.S.G.] 5K2[.0] would offer an avenue of relief, that's not this case." *See* § 5K2.0 ("Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' "). The district judge stated that he did not see any reasonable basis upon which to proceed in that direction. It is from these rulings at his sentencing that Khan appeals. We affirm.

## DISCUSSION

### I Construing A Cooperation Agreement

#### A. *Generally*

 Absent a specific agreement, the decision by a prosecutor to refuse to recommend a downward departure is generally not subject to judicial review. *See Huerta*, 878 F.2d at 94. Where, as here, there is a cooperation agreement that provides for a downward departure motion incorporating the "substantial assistance" language of the statute, the prosecutor's discretion is generally the sole determinant of whether the defendant's conduct warrants making the motion.

We are mindful of the deference due prosecutorial decisions in this area. *See* Guidelines § 5K1.1, Commentary, Application Note 3 ("Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance."); *cf. Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974). With such broad discretionary power, prosecutors would have little incentive to misuse cooperation agreements and renege on their promises to move for downward departures. *See United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.1990); *Huerta*, 878 F.2d at 93 ("[t]here are significant institutional incentives" for the prosecutor to act in good faith and to exercise sound judgment regarding such motions because the government has a keen interest in encouraging cooperation through such agreements).

■ We recognize, of course, that criminal sentencing proceedings are not the same as civil contract disputes. *See Innes v. Dalsheim*, 864 F.2d 974, 978 (2d Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989); *United States ex rel. Selikoff v. Commissioner of Correction*, 524 F.2d 650, 654 (2d Cir.1975). Nonetheless, cooperation agreements, like plea bargains, may usefully be interpreted with principles borrowed from the law of contract. *See United States v. Alexander*, 869 F.2d 91, 95 (2d Cir.1989); *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir.1984); *see also Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (specific performance is appropriate remedy for breach of plea agreement).

■ Applying those principles, we observe that where a contract is conditioned on the satisfaction of the obligor, the condition is not met "if the obligor is honestly, even though unreasonably, dissatisfied." *Restatement (Second) of Contracts* § 228, Comment a. There is, as we noted in *Rexach*, 896 F.2d at 714, an implied obligation of good faith and fair dealing in every contract. *See Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980); *Restatement (Second) of Contracts* § 205. Consequently, the prosecution's determination that it is dissatisfied with the defendant's performance under the cooperation agreement—as with other areas of prosecutorial discretion—may not be reached dishonestly or in bad faith. *See Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974) (prosecutor's substitution of more serious charge at new trial after defendant's successful appeal); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974) (allegation of intentional and purposeful discrimination leading to selective prosecution).

■ Further, the government's discretion does not grant it power to turn its back on its promises to the defendant under the cooperation agreement, *see Santobello*, 404 U.S. at 262, 92 S.Ct. at 498; *Innes*, 864 F.2d at 978, or to ignore a defendant's cooperation efforts simply because the defendant is supplying information that the government does not want to hear. *See United States v. Galan*, No. 89 C.R. 198, 1989 WL 63110 (S.D.N.Y. June 8, 1989) (U.S.Dist.LEXIS 6383). As *Santobello* teaches, a presumption of fairness underlies agreement between the defendant and the prosecutor, so that when a prosecutor makes a promise and obtains in return cooperation from the defendant, the promise must be kept. *See* 404 U.S. at 261–62, 92 S.Ct. at 498.

■ From these decisions it is plain that where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith. The government may reject the defendant's performance of his or her obligations only if it is honestly dissatisfied.

## B. *Present Agreement*

■ Here Khan's agreement with the government explicitly states that whether the defendant has made a "good faith effort to provide substantial assistance" is to be "determined by this Office." The phrase unambiguously establishes that evaluation of Khan's performance is in the sole discretion of the prosecutor. In addition, the agreement states that any downward departure motion must be made "pursuant to" the Sentencing Reform Act and Sentencing Guidelines. We note that the agreement surprisingly fails to refer explicitly to section 5K1.1 of the Sentencing Guidelines, which sets out the procedures for a government motion on the basis of which the court may depart downwardly from the term prescribed by the guidelines. Thus, both the express language of the agreement and its incorporation of the statute ensure that evaluation of Khan's performance will lie in the sole discretion of the prosecutor. But in the case at bar, unlike *Rexach*, the prosecutor did not reveal its reasons for refusing to request a downward departure, having previously only advised defense counsel generally that Khan had not lived up to his part of the

agreement. The prosecutor said nothing at sentencing.

The government apparently did not believe that the defendant furnished it with as much useful information as he could have, or to paraphrase Henry James, it believed he was a man on whom nothing was gained. It might, of course, have been helpful had the government explained why it believed that Khan had not fulfilled his bargain instead of standing mute at sentencing. As in *Rexach*, the prosecution could have informed defense counsel prior to sentencing of the government's reasons for refusing to recommend a downward departure. However, though we remain troubled by the government's actions, under the facts of this case and in light of the cooperation agreement, we find that the district court must be affirmed.

■ There are two steps involved in sentencing when a cooperation agreement contemplates a motion for downward departure. Defendant must first allege that he or she believes the government is acting in bad faith. Such an allegation is necessary to require the prosecutor to explain briefly the government's reasons for refusing to make a downward motion. Inasmuch as a defendant will generally have no knowledge of the prosecutor's reasons, at this first or pleading step the defendant should have no burden to make any showing of prosecutorial bad faith. Following the government's explanation, the second step imposes on defendant the requirement of making a showing of bad faith sufficient to trigger some form of hearing on that issue. *See* Guidelines § 6A1.3. Again, using *Rexach* as an example, the district court there credited the government's explanation that defendant had not given it reliable information or assistance of any value. In concluding that Rexach had not provided substantial assistance, it found therefore that the prosecutor had acted in good faith. *See Rexach*, 896 F.2d at 712.

Here the defendant never took the first step. Khan never raised the issue of the prosecutor's bad faith. Khan's attorney merely said: "I suppose ... I am saying that they acted in bad faith, but I don't really mean that." In fact, at a proceeding prior to the sentencing hearing Khan's counsel advised the court that "the government's position [that Khan had not cooperated] may very well be absolutely meritorious." Hence, with no allegation before it by the defendant that the government was not honestly dissatisfied, the district court properly denied the request to review the government's refusal to move for downward departure at sentencing.

## II Departure Under § 5K2.0

■ Khan also asserts even if the government's refusal to move for a downward departure is deemed a good faith exercise of prosecutorial discretion under § 5K1.1, the district court was nevertheless empowered to depart from the applicable guidelines range under § 5K2.0, and its failure to do so was error. We agree it would have been theoretically possible for the district court to make a downward departure under § 5K2.0, notwithstanding the government's decision not to move for a downward departure under § 5K1.1. But the district court had no authority to take such action in *this* case.

The cooperation agreement provided that the prosecutor would advise the sentencing court of the nature and extent of defendant's conduct and any other relevant information. Khan argues that this provision created a *separate obligation* on the government's part to provide the sentencing court with evidence of his activities "relevant to sentencing." Specifically, defendant contends the sentencing court should have been informed that: (1) he informed the DEA about an individual who "sought [his] assistance in selling two kilograms of heroin"; (2) "in the last few weeks before his sentencing, [he] agreed to a DEA agent's request that he assist in the capture of another suspect"; and (3) he helped save the life of one Mr. Faiz, a DEA confidential informant kidnapped and held by Pakistani heroin traffickers. Khan asserts the government breached this separate provision of the cooperation agreement by refusing to inform the sentencing court of his alleged activities.

■ We are unpersuaded by this argument. Had the issue of the government's bad faith been raised before the district court, and had the information Khan now claims *should have* been before it actually been before it, it still would have been improper (with one exception) for the district court to rely on that information as a grounds for departure under § 5K2.0. The catch-all provision of § 5K2.0 permits departures when "the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" Generally, § 5K2.0 has no application at sentencing where the basis for defendant's motion has been considered and rejected by the government as a basis for a § 5K1.1 downward departure motion. *See United States v. Reina*, 905 F.2d 638, 641 (2d Cir.1990); *accord United States v. Bruno*, 897 F.2d 691, 695 (3d Cir.1990); *United States v. Justice*, 877 F.2d 664, 666 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989).

The very existence of § 5K1.1 demonstrates that the sentencing commission clearly considered the question of whether assistance to the government should be taken into account. *Reina*, 905 F.2d at 641. The only exception to this rule is where the defendant offers information regarding actions he took, which could not be used by the government to prosecute other individuals (rendering § 5K1.1 inapplicable), but which could be construed as a "mitigating circumstance" for purposes of § 5K2.0. *See* Guidelines § 5K1.1, Commentary, Application Note 2 ("Substantial assistance is directed to the investigation and prosecution of criminal activities by persons other than the defendant").

Two of defendant's actions that he alleges warranted downward departure in this case were clearly efforts on his part to aid the government in the investigation and prosecution of other drug dealers. As such, they would not be appropriate grounds for departure under § 5K2.0. *See Reina*, 905 F.2d at 641.

■ Yet, defendant's third claim gives us pause. If, as Khan alleges, he did in fact save the life of a confidential DEA informant who had been kidnapped by Pakistani heroin traffickers, this information could not provide direct benefit to the government in its prosecution of others. Nevertheless, if true, it certainly reflects well on defendant's character and could have provided a mitigating factor at his sentencing. Because rescuing confidential informants from the jaws of death is not a grounds for departure taken into account by the Guidelines, the district court is empowered to consider it as a possible grounds for downward departure under § 5K2.0, notwithstanding the government's decision not to move for a departure under § 5K1.1.

■ But this alleged beneficent action by defendant was not considered since it was not presented to the district court prior to sentence being imposed. This is not a case where the government has left a defendant ignorant of the actual impact his efforts made in its investigation and prosecution of others. The defendant—if we credit this claim—was well aware he helped to save the life of Mr. Faiz, the kidnapped informant, but for some inexplicable reason never mentioned this commendable act to the district court prior to sentence. Having failed to raise the issue at sentencing, defendant cannot now claim that the district court erred in refusing to grant his motion for a downward departure under § 5K2.0.

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the district court is therefore affirmed.