**UNITED STATES of America**

v.

**Gabriel TEJADA, Defendant.**

**No. 90 Cr. 369 (JES).**

United States District Court,
S.D. New York.

Sept. 9, 1991.

Otto G. Obermaier U.S. Atty., S.D.N.Y., New York City (Robin W. Morey, Asst. U.S. Atty., of counsel), for U.S.

Goldstein, Weinstein & Fuld, Bronx, N.Y. (Barry A. Weinstein, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

On September 28, 1990, defendant Gabriel Tejada entered a plea of guilty to both counts of a two count indictment: (1) conspiracy to distribute heroin in violation of 21 U.S.C. § 846; and (2) possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B). Count 1 of the indictment carries a statutory mandatory minimum of ten years to a maximum of life imprisonment; count 2 carries a mandatory minimum imprisonment term of five years to a maximum of forty years. The Pre–Sentence Report indicates that the appropriate range under the Federal Sentencing Guidelines is 97 to 120 months imprisonment. Defendant Tejada moves for downward departure from the Sentencing Guidelines and the statutory minimum sentence. For the reasons set forth below, the motion is denied.

## BACKGROUND

The superseding indictment charged that Tejada conspired with co-defendants Claudio Rodriguez, Juan Silverio, and Alan Brito, and unindicted co-conspirators Orlando Zayas and Walter Borrego a/k/a Walter Sanchez to distribute and possess with intent to distribute one kilogram or more of heroin. The conspiracy began in early May of 1990 when a confidential informant working with the United States Drug Enforcement Agency ("DEA") met with Walter Borrego concerning the purchase of a kilogram of heroin. Following discussions with Borrego and Orlando Zayas, the confidential informant was given samples of heroin by Alan Brito at the Agua y Luz Restaurant on Amsterdam Avenue in Manhattan on May 8 and 11, 1990. Thereafter, the confidential informant and Zayas agreed that the delivery of the kilogram would take place on May 22 or 23.

On May 23, 1990, the confidential informant met with Zayas at Sherman Avenue and West 168th Street in Manhattan and traveled to the Agua y Luz Restaurant. There, the confidential informant met with Juan Silverio, Claudio Rodriguez, and Tejada. However, Silverio informed the confidential informant that he would be unable to deliver a kilogram of heroin at that time, but that he could provide 400 grams that day with the remaining 600 grams to be delivered later. The confidential informant agreed to this arrangement and told Zayas to call his beeper when the heroin arrived.

Later that day Tejada arrived at the Agua y Luz Restaurant with 350 grams of heroin, instead of the agreed upon 400 grams, and met with Zayas. Zayas called the informant's beeper and told him to meet them at the Tropicana Restaurant on Audubon Avenue and West 167th Street in Manhattan. Shortly after the informant met them at that restaurant they agreed to complete the transaction at a different location, Reynold's Bar, which was located on Broadway at West 180th Street. However, while Tejada was showing the confidential informant the heroin, which was in the glove compartment of his car, agents from the DEA arrested Tejada and Zayas.

Thereafter, on July 26, 1990, Zayas pleaded guilty and entered into a cooperation agreement with the government. Meanwhile, the Court set the matter down for trial on October 2, 1990 for the remaining defendants. Tejada's attorney subsequently contacted the government in late September to discuss a cooperation agreement and both Tejada and his attorney met with the Assistant United States Attorney at a proffer session. Thereafter, the government agreed to enter into a cooperation agreement with Tejada. That agreement, which was a standard cooperation agreement, provided that if the United States Attorney's Office determined that Tejada had provided "substantial assistance in an investigation or prosecution" the government would file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e) permitting the Court to impose a sentence below the guideline range or the statutory minimum. The agreement also required Tejada to truthfully and fully disclose information about the activities of himself and others concerning all matters of which the government inquires of him and to testify truthfully about those matters if the government called him as a witness at a trial.

After Tejada pleaded guilty, co-defendants Silverio and Rodriguez also pleaded guilty on October 2, 1990. The government argues that they did so because on the date of trial the government informed them that the New York City Police Department had evidence that they sold heroin to undercover police officers but was willing to stipulate to relevant conduct of one kilogram of heroin and not to object to concurrent time on the state charges if the defendants pleaded guilty to the federal charge. However, Tejada argues that they pleaded guilty because they became aware of Tejada's cooperation, a claim supported by an affidavit of Kenneth P. Olsen, Esquire, counsel for Claudio Rodriguez. Alan Brito refused to plead guilty and went to trial, and was convicted on both counts. Tejada did not testify at that trial; Orlando Zayas did.

Subsequently, on March 26, 1991, the Government notified Tejada's counsel that it would not file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines or 18 U.S.C. § 3553(e) because Tejada had not provided substantial assistance to the Government and because he had not complied with his obligation to provide truthful information to the government.

## DISCUSSION

Tejada raises two arguments in support of his motion for a downward departure: (1) that the government's failure to file the motion for downward departure is in bad faith; and (2) that the Court should depart downward from the Sentencing Guidelines because his cooperation has substantially assisted the Court by motivating his co-defendants to plead guilty.

■ Although the determination of whether the defendant has "substantially assisted" the government so as to warrant the making of a motion for downward departure pursuant to § 5K1.1 or § 3553(e) is left to the sole discretion of the prosecutor, the Second Circuit has held that a prosecutor's discretion is limited by the requirement that it be exercised fairly and in good faith. *See, e.g., United States v. Khan,* 920 F.2d 1100, 1105 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). However, since the prosecutor's discretion is entitled to deference, the Court's review of that discretion is necessarily limited. *See Khan, supra,* 920 F.2d at 1106; *Rexach, supra,* 896 F.2d at 714.

■ In this case, Tejada's claim that the government's failure to call him to testify at Brito's trial was motivated by a bad faith desire to avoid making a motion for downward departure is totally unsupported and is thus not sufficient to require a hearing. This is especially true since the government has offered two most plausible explanations for not calling him as a witness: (1) Zayas was already prepared to testify and Tejada's testimony would therefore have been cumulative; and (2) it want-

ed to keep Tejada's cooperation secret so that he could assist in other investigations. Moreover, the government also states that it decided not to make the motion because the government agents concluded that Tejada was not truthful about his knowledge of the drug traffickers whose beeper numbers he had stored in his watch or about his own involvement in the drug trade. Indeed, as the government points out, Tejada denied knowing anyone else who trafficked in drugs and denied that he knew the head of the drug trafficking organization he worked for, when in fact, that person was his brother-in-law.[1]

Relying upon *United States v. Garcia,* 926 F.2d 125 (2d Cir.1991), Tejada also argues that despite the government's refusal to make a motion for a downward departure, the Court should impose a sentence lower than the Sentencing Guidelines range because his codefendants pleaded guilty after they learned of his cooperation, and thus his cooperation assisted the Court and the judicial system, even if it did not assist the government. *See id.* at 128. However, since *Garcia* involved a departure from a sentencing guideline range pursuant to 18 U.S.C. § 3553(b), it did not deal with the issue of whether the Court can depart from a mandatory minimum sentence absent an application from the government. An application to depart from a statutory minimum term of imprisonment is controlled by 18 U.S.C. § 3553(e), which clearly provides that the Court may depart from a statutory minimum only where the government makes an appropriate motion based upon substantial assistance to the prosecution.

Even assuming *arguendo* that the decision not to seek downward departure from a mandatory minimum is likewise subject to a good faith standard, as noted above, Tejada has not established any bad faith by the government in deciding not to make the application. It follows that the Court lacks the power to depart from the mandatory minimum sentence. Moreover, since the ten year mandatory sentence is equivalent to the maximum sentence that the Court could impose under the the Guidelines, there is no need to resolve the issue of whether Tejada is entitled to a departure from the Sentencing Guidelines on the ground that his cooperation substantially assisted the Court and the judicial system.

### CONCLUSION

Accordingly, the defendant's motion seeking that the Court depart from the guideline range and the statutory minimum sentence is denied.

It is SO ORDERED.

---

**1.** The government's good faith is further demonstrated by the circumstance that the Assistant United States Attorney attempted to contact Tejada's counsel twice to persuade him to discuss with his client the potential ramifications of continued intransigence before she made the final decision not to file the motion for a downward departure. However, the government asserts that it never received a response to these communications.