UNITED STATES of America

v.

Rodger Dale ARMSTRONG, Defendant.

Nos. 90 Cr. 755–04 (RWS), 92 Cr. 487 (RWS) and 92 Cr. 1141 (RWS).

United States District Court, S.D. New York.

Jan. 10, 1994.

state commerce in violation of 18 U.S.C. § 2314. On June 11, 1992, Armstrong pled guilty to one count of transportation of stolen checks in violation of 18 U.S.C. § 2314. On January 15, 1993, Armstrong pled guilty to one count of making a false statement in violation of 18 U.S.C. § 1001. For the reasons set forth below, a sentence of 42 months of imprisonment will be imposed, together with a term of three years of supervised release, subject to the hearing now set for January 12, 1994. A fine of $5,000.00 will be imposed, and pursuant to 18 U.S.C. § 3013, Armstrong will pay a mandatory assessment of $200.00.

This prosecution was founded upon a series of schemes involving the theft of securities and the transport and attempted sale of those securities in interstate and international commerce. After his arrest, Armstrong entered into a cooperation agreement with the Government, pursuant to which he was debriefed regarding his criminal activities and in preparation for his anticipated testimony at the trials of his co-conspirators. In the course of these debriefings, the Government discovered that Armstrong had lied with regard to the manner in which he had obtained an illegally-held passport. This discovery, which formed the basis for his indictment for making false statements in violation of 18 U.S.C. § 1001, also led to the termination of the cooperation agreement. In addition, Armstrong has pled guilty to a one count information filed in the Southern District of Texas which charged him with knowingly transporting through interstate commerce a stolen check in the amount of $26,031.99.

In preparing Armstrong's Presentence Report (the "Report"), the United States Probation Department grouped the counts of conspiracy to transport stolen securities, transportation of stolen securities, and transportation of stolen checks pursuant to United States Sentencing Commission Guidelines (the "Guidelines") § 3D1.2(d). Armstrong's false statement charge was applied to the computation of the Probation Department's recommended sentence pursuant to Guidelines § 3D1.2(c).

## SENTENCING OPINION

SWEET, District Judge.

Defendant Rodger Dale Armstrong, ("Armstrong") pled guilty on June 19, 1991 to one count of conspiracy to transport stolen securities in interstate commerce in violation of 18 U.S.C. § 371, and one count of transportation of stolen securities through inter-

The Report grades Armstrong's offense conduct under the Guidelines at a total offense level of 22 and assigns him a Guidelines criminal history category of I, for which the Guidelines provide an imprisonment range of 41 to 51 months. Pursuant to Guidelines § 5D1.1(a), the court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is ordered, or when required by statute. The Guidelines provide that the term of supervised release shall not exceed three years. Guidelines § 5D1.2(b)(2). The Guidelines also provide for a fine ranging from $7,500 to $75,000. Guidelines § 5E1.2(c).

Armstrong, by letter from his attorney dated December 7, 1993, has raised a number of objections to the Report and has requested downward departures from the applicable Guidelines on a number of grounds. For the following reasons, these requests are denied.

The Report enhanced Armstrong's Offense Level by two levels pursuant to Guidelines § 3C1.1, which provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The justification that Armstrong's Report provides for this measure is that "the defendant, while under a cooperative agreement with regard to 90 CR 755(RWS), provided fraudulent statements when questioned as to the acquisition of a passport which he used for travel from the United States to England." Report at ¶ 120.

■ Armstrong argues that this is not the type of fraudulent statement which merits an enhancement under § 3C1.1. The Guidelines Commentary and Application Notes are authoritative unless the particular commentary or note in question violates the Constitution or a federal statute, or is inconsistent with or is a plainly erroneous reading of, that guideline. *Stinson v. United States,* ── U.S. ──, ──, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). Application Note 3 to Guidelines § 3C1.1 provides "a non-exhaustive list of examples of the types of conduct to which this enhancement applies." Included within this list is "any ... obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct." The fraudulent statement that Armstrong made regarding the source of his passport is the basis of his being charged of one count of making a false statement in violation of 18 U.S.C. § 1001, to which charge he has pled guilty. The enhancement of Armstrong's Offense Level pursuant to Guidelines § 3C1.1 is therefore appropriate.

■ Armstrong also objects to the Report's failure to assign a three level reduction for acceptance of responsibility pursuant to Guidelines § 3E1.1. This section provides for a reduction in a defendant's offense level of up to three levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Application Note 4 to this section provides that "[c]onduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," although it allows that both § 3E1.1 and § 3C1.1 may apply in "extraordinary cases." Armstrong has not argued that this is an "extraordinary case," and there is nothing in the record to indicate that this is such a case. There are no grounds, therefore, for the application of the reductions in offense level permitted by Guidelines § 3E1.1.

Armstrong also argues that the Government exercised bad faith in refusing to move, pursuant to Guidelines § 5K1.1, for a downward departure from the applicable sentencing range on the basis of Armstrong's substantial assistance in the prosecution of this indictment. Guidelines § 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

On June 19, 1991, Armstrong signed a cooperation agreement with the Government, which provides, in part, that "if it is determined by this Office that Roger Armstrong has provided substantial assistance in an in-

vestigation or prosecution, this Office will file a motion ... requesting the Court to sentence Defendant in light of the factors set forth in Section 5K1.1(a)1–5." The Government terminated Armstrong's cooperation agreement on December 14, 1992, because it found that he had lied regarding the source of an improperly held passport.

The Second Circuit has held that "[a]bsent a specific agreement, the decision by a prosecutor to refuse to recommend a downward departure is generally not subject to judicial review." *United States v. Khan*, 920 F.2d 1100, 1104 (2d Cir.1990), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *see also United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Huerta*, 878 F.2d 89, 94 (2d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). Even where a plea agreement specifically provides for a departure motion, "the prosecutor's discretion is generally the sole determinant of whether the defendant's conduct warrants making the motion." *Khan*, 920 F.2d at 1104; *see also* Guidelines § 5K1.1, Application Note 3 ("Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance...").

 A prosecutor's decision not to honor a specific agreement to move for a cooperation departure is reviewable only for misconduct or bad faith. *United States v. Agu*, 949 F.2d 63, 67 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992). In challenging such a decision by the prosecutor, the defendant must first allege that he or she believes the government is acting in bad faith. Such an allegation requires the government to explain briefly its reasons for refusing to make a downward motion. Following the government's explanation, the defendant must make a showing of bad faith sufficient to trigger some form of hearing on the issue. *Khan*, 920 F.2d at 1106.

Armstrong's attorney claims that bad faith is shown by, among other things, telephone conversations with a United States Attorney that took place immediately after the Government discovered Armstrong's prevarica-

tion. In these conversations, Armstrong's attorney received the impression that the United States Attorney was incensed at Armstrong and that "he had taken the passport statement *personally*." (Dec. 7 Letter at 6.)

 The fact that the Government found it necessary to terminate Armstrong's cooperation agreement because Armstrong gave false information in the course of his debriefing is sufficient indication that the Government's refusal to move for a downward departure is not the result of bad faith. The cooperation agreement specifically required that "Armstrong must at all times give complete, truthful, and accurate information." The failure of a defendant to give reliable information is sufficient justification for the Government to refuse to move for a downward departure. *Khan*, 920 F.2d at 1106. Armstrong's prevarication also eliminated his potential usefulness as a witness at the trial of his co-conspirators, since his credibility would have been placed in doubt by having pled guilty to making false statements. There has not been a sufficient showing of bad faith on the part of the Government to warrant a hearing on their refusal to move for a downward departure.

Armstrong also argues that, notwithstanding the Government's refusal to make a Guidelines § 5K1.1 motion for a downward departure, the Court should grant a downward departure from the applicable Guidelines range based on Armstrong's substantial assistance to the government and to the administration of justice pursuant to Guidelines § 5K2.0.

 Guidelines § 5K2.0 provides that "the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Actions taken by a defendant that facilitate the proper administration of justice in the district courts can be treated as mitigating circumstances not adequately taken into consideration by the Sentencing Commission within

the meaning of Guidelines § 5K2.0. *United States v. Garcia,* 926 F.2d 125 (2d Cir.1991).

In *Garcia,* the defendant's cooperation helped the government develop its case and "broke the logjam" in a multi-defendant case. The defendant's early guilty plea and willingness to testify against co-defendants induced others to enter guilty pleas, which conserved judicial resources and facilitated the disposition of the case without a trial. In such cases, the Second Circuit held that the district court could exercise "sensible flexibility" in departing from the sentencing guidelines. *Garcia,* 926 F.2d at 128.

■ The present case is not analogous to *Garcia.* The Government was forced to terminate Armstrong's cooperation agreement on December 14, 1992, because the information supplied by Armstrong was not trustworthy. Although Armstrong claims that his assistance was a factor in moving the principal defendant in this case to plead guilty, this principal defendant did not actually plead guilty until March 10, 1993, nearly three months after the termination of the Armstrong cooperation agreement. The Government believes that this later plea was in no way the result of Armstrong's abortive cooperation agreement. Report at 38. No downward departure for facilitation of justice is warranted in this case.

Finally, Armstrong argues that the Court should consider granting a downward departure in view of the possibility that the principal defendant in this case may be repatriated to the United Kingdom to serve his sentence and would, under the laws in effect in that country, serve a reduced sentence.

■ Even if Armstrong's predictions with regard to the principal defendant's future come to pass, consideration of disparity between the sentences of individual codefendants is not a proper basis for a downward departure from the Guidelines. *See United States v. Minicone,* 960 F.2d 1099, 1112 (2d Cir.1992). "To reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that

of all similarly situated defendants throughout the country." *United States v. Restrepo,* 936 F.2d 661, 671 (2d Cir.1991) (quoting *United States v. Joyner,* 924 F.2d 454, 460–61 (2d Cir.1991)). Any disparity between Armstrong's sentence and those of his co-defendants is not a ground for departing downward from the Guidelines.

*The Sentence*

Consistent with the range provided by the Guidelines, Armstrong shall be sentenced to 42 months of imprisonment to be followed by three years of supervised release, during which he shall abide by the Standard Conditions of Supervision 1 through 13. As further conditions of his supervised release, Armstrong shall: satisfy a fine in the amount of five thousand dollars, at a rate and schedule to be determined by the Probation Department; shall provide full financial disclosure, upon the request of the Probation Department; shall not incur any lines of credit during his period of supervision without the prior approval of the Probation Department; and shall enter into an alcohol aftercare treatment program, if deemed necessary by the Probation Department. An assessment of $200.00 is mandatory pursuant to 18 U.S.C. § 3013. This sentence is subject to the sentencing hearing now set for January 12, 1994.

It is so ordered.