**UNITED STATES of America,**

**v.**

**Chandradutt HARPAUL, also known as "Ronnie," and Sewdutt Harpaul, also known as "Mike," Defendants.**

**No. CR 97–303 (ADS).**

United States District Court, E.D. New York.

April 27, 1998.

---

3. Petitioner has submitted a letter from prison officials which confirms his medical condition.

Zachary W. Carter, U.S. Attorney, E.D.N.Y., Garden City, NY, by David P. Bloch, Senior Trial Atty., Barry Jonas, Senior Trial Atty., for U.S.

Jay Goldberg, P.C., New York, NY, for Chandradutt Harpaul, also known as "Ronnie".

Judd Burstein, P.C., New York, NY, for Sewdutt Harpaul, also known as "Mike".

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case is one of first impression in which the Court is requested to review a decision made by the Government not to issue letters pursuant to United States Sentencing Commission Guidelines Manual § 5K1.1 ("5K1.1 letter"). The two prosecutors assigned to this case believe that such letters are well-deserved due to the defendants' assistance in a Government investigation. In addition, the postal inspector assigned to this case has described the defendants' cooperation as "outstanding." However, because no prosecution resulted and the investigation was allegedly not "furthered" in any manner as a result of the defendants' cooperation, the Government has concluded that substantial assistance has not been rendered. The question presented under these novel circumstances is, has the Government acted in good faith in declining to issue the 5K1.1 letters?

On August 29, 1997, the defendants, Chandradutt Harpaul, a/k/a "Ronnie," and Sewdutt Harpaul, a/k/a "Mike," were each convicted, upon their pleas of guilty, of: (1) knowingly and willfully attempting to evade income tax for the tax year 1993, in violation of 26 U.S.C. § 7201; (2) mail fraud, in violation of 18 U.S.C. § 1341; and (3) conspiracy to commit these crimes, in violation of 18 U.S.C. § 371. Both pleas were entered pursuant to cooperation agreements with the Government. Presently before the Court are the defendants' motion seeking specific performance by the Government of their cooperation agreements or, in the alternative, the withdrawal of their guilty pleas.

## I. BACKGROUND

The defendants are co-owners of a number of Sizzler franchise restaurants. By an indictment returned on April 9, 1997, the defendants were charged with conspiracy, tax fraud, and mail fraud based on allegations that they inaccurately reported the income earned from one of their restaurants. The defendants were arraigned on April 25, 1997 and entered not guilty pleas. Subsequently, the defendants entered into cooperation agreements with the Government and pled guilty on August 29, 1997.

Pursuant to the requirements of Rule 11 of the Federal Rules of Criminal Procedure, the Court conducted exhaustive allocutions with the defendants before accepting their pleas of guilty. During the plea allocutions, the Court established that the defendants fully understood the charges against them and the rights that they would be waiving as a result of pleading guilty. The Court also established that the defendants understood the maximum penalties for the charges to which they were pleading and emphasized that, notwithstanding any promises or representations which may have been made to them, the Court alone determines the sentence to be imposed. The Court also questioned the defendants about the cooperation agreements that they had entered into with the Government. The defendants stated that they had reviewed the cooperation agreements with their respective attorneys and that the agreements met with their approval. The Court also explained the meaning of the federal sentencing guidelines and discussed those complex rules. At the time the pleas were entered, the Court was satisfied that the pleas were knowing and voluntary and not the result of any promises beyond those contained in the cooperation agreements.

The Court notes that although the defendants have attached a copy of an unexecuted proposed plea agreement, the Court assumes that, since neither party has claimed otherwise, the agreements entered into are identical to the attached proposed plea agreement. With respect to cooperation, the proposed plea agreement provides that

[i]f the Office determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Office will file a motion pursuant to Guidelines Manual § 5K1.1 and 18 U.S.C. § 3553(e) with the sentencing Court setting forth the nature and extent of his cooperation .... In this connection, it is understood that the Office's determination of whether the defendant has cooperated fully and provided substantial assistance, and the Office's assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him.

(Notice of Mot., Ex. A. ¶ 5.) In addition, the final paragraph of the agreement provided that "[n]o promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless memorialized in writing and signed by all parties." (*Id.* ¶ 9.)

## II. DISCUSSION

The gravamen of the defendants' complaint is that the Government breached the cooperation agreements after receiving the benefit of the defendants' unreserved assistance. The defendants seek specific performance by the Government of their cooperation agreements, requiring the Government to make motions for downward departure pursuant to Guidelines § 5K1.1, *see United States v. Pollack*, 91 F.3d 331, 334 (2d Cir.1996) (plea agreements are construed according to contract law); *United States v. Knights*, 968 F.2d 1483, 1486 (2d Cir.1992) ("specific performance may also be available when the government breaches a plea agreement containing a cooperation clause"); *United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir.1990) ("cooperation agreements, like plea bargains, may usefully be interpreted with principles borrowed from the law of contract"), *cert. denied*, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir.1990) ("Cooperation agreements, like plea bargains, are interpreted according to principles of contract law."), or, in the alternative, to permit the defendants to withdraw their guilty pleas pursuant to Rule 32(e) of the Federal Rules of Criminal Procedure.

■ In *Wade v. United States*, 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992), the Supreme Court held that even absent the existence of a cooperation agreement, defendants are entitled to assurance that the Government's refusal to file a substantial-assistance motion is not based on an unconstitutional motive. Where such an agreement exists, defendants are entitled to a " 'more searching review.' " *United States v. Brechner*, 99 F.3d 96, 99 (2d Cir.1996) (citing *United States v. Kaye*, 65 F.3d 240, 243 (2d Cir.1995)). There is such an agreement here. Accordingly, the defendants are entitled to a more searching review of the Government's decision not to grant them 5K1.1 letters.

■ The Government has broad discretion in deciding whether to make a motion pursuant to Guidelines § 5K1.1, which decision "may be subjected to only limited review by a district court." *Knights*, 968 F.2d at 1487; *see also United States v. Resto*, 74 F.3d 22, 25 (2d Cir.1996); *Rexach*, 896 F.2d at 713. The question of "substantial assistance" is "self-evidently a question that the prosecution is uniquely fit to resolve." *United States v. Huerta*, 878 F.2d 89, 94 (2d Cir. 1989).

■ However, the Government's discretion is not unlimited. The Second Circuit has held that "when a cooperation agreement allows for a substantial-assistance motion contingent on the government's subjective evaluation of a defendant's efforts to cooperate, the district court may review only to determine whether the prosecution based its decision on impermissible considerations such as race or religion, or 'whether the prosecutor has made its determination in good faith.' " *Id.* (quoting *United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.1990)); *see also United States v. Fernandez*, 127 F.3d 277, 285–86 (2d Cir.1997); *Brechner*, 99 F.3d at 99; *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir.1995). "[T]he scope of the government's discretion [does not] permit it to ignore or renege on contractual commitments to defendants." *Rexach*, 896 F.2d at

714 (citations omitted); *see also Khan,* 920 F.2d at 1105. Nor does the Government's discretion encompass the power "to ignore a defendant's cooperation efforts simply because the defendant is supplying information that the government does not want to hear," *Khan,* 920 F.2d at 1105 (citation omitted), or "because the government ultimately loses its case ...," *Knights,* 968 F.2d at 1488. "The government may reject the defendant's performance of his or her obligations only if it is honestly dissatisfied." *Id.; see also Pollack,* 91 F.3d at 335.

■ To prevail on a claim of breach of a cooperation agreement, a

> [d]efendant must first allege that he or she believes the government is acting in bad faith. Such an allegation is necessary to require the prosecutor to explain briefly the government's reasons for refusing to make a downward motion. Inasmuch as a defendant will generally have no knowledge of the prosecutor's reasons, at this first or pleading step the defendant should have no burden to make any showing of prosecutorial bad faith. Following the government's explanation, the second step imposes on defendant the requirement of making a showing of bad faith sufficient to trigger some form of hearing on that issue.

*Khan,* 920 F.2d at 1106. The Second Circuit has not specified the type of hearing required in such an instance, stating that "whether it be merely oral argument or should include a formal evidentiary hearing is a matter that lies within the sound discretion of the district court." *Knights,* 968 F.2d at 1487 (citations omitted). "At a minimum, however, the district court should consider any evidence with a significant degree of probative value, and should rest its findings on evidence that provides a basis for [appellate] review." *Leonard,* 50 F.3d at 1157.

■ In this case, the language of the cooperation agreements leaves no doubt that the Government has sole discretion to evaluate the defendants' cooperation. *See Rexach,* 896 F.2d at 714; *Khan,* 920 F.2d at 1105. The defendants assert that although the plea allocution made it clear that the defendants understood that the decision to make a downward departure was within the discretion of

the Court, "they were completely misled by defense counsel as to the meaning of the term 'substantial assistance,' believing erroneously that if they did all that was asked of them, they would, by definition, be rendering 'substantial assistance.'" (Defs.' Memo. in Supp. at 9.). Both defense counsel maintain that they assured the defendants that the Government would automatically move pursuant to Guidelines § 5K1.1 on their behalf provided they did everything the Government requested of them. Defense counsel recount conversations with the Assistant United States Attorneys assigned to this case prior to the defendants' pleas of guilty and prior to the execution of the plea agreements, the substance of which is refuted by the Government.

The defendants further maintain that pursuant to their cooperation agreements, they provided assistance in an unrelated Government investigation of a car dealership which was suspected of selling cars for cash, and under-reporting its income. In doing this, the defendants wore "wires." They contend that this undercover operation had failed, on a few previous occasions, to yield an arrest. The defendants were allegedly informed by Assistant United States Attorneys Barry Jonas and David P. Bloch that since they are immigrants with a cash business, they match the profile of customers who would purchase a car with cash. The defendants claim that they fully cooperated with the Government and therefore, are entitled to the benefit of the agreement. The defendants make no claim that the Government's decision not to move for a downward departure was motivated by unconstitutional considerations. Rather, their arguments are confined to their belief that the Government's decisions were based on bad faith. Therefore, "the Court's role is limited to deciding whether the prosecutor has made its determination in good faith. If [so], the prosecutor has not breached the agreement and the Court's role is at an end." *Rexach,* 896 F.2d at 714 (citation omitted).

It is interesting to note that Assistant United States Attorneys Jonas and Bloch have both acknowledged that the defendants should receive 5K1.1 letters from the Gov-

ernment. (*See* Gov't Response at 2.) At the possible risk of disapproval from their superiors, and to their credit, they state that

[a]t the outset, it is important to note that the prosecutors assigned to this case believe that the defendants should receive a 5K1.1 departure. The prosecutors initially expressed that position orally to a supervisor at the United States Attorney's Office; it was expressed a second time in writing in a memorandum presented to the 5K1.1 committee; and, was expressed orally again both before the 5K1.1 committee's initial meeting as well as before and after the committee met a second time to consider this matter.

(*Id.*) Furthermore, it is undisputed that Postal Inspector Sol Farash informed the defendants that their cooperation was outstanding. However, "[w]hile Inspector Farash felt that the defendants should receive a 5K1.1 letter, he never promised any defendant or defense counsel that one will be forthcoming." (*Id.* at 3.)

These laudatory appraisals of the defendants' cooperation were disregarded by the United States Attorney's Office, which reached a contrary conclusion:

The 5K Committee has determined that no substantial assistance was rendered. Factually speaking, the committee indicated there was neither an arrest or prosecution that flowed from defendants' cooperation. Additionally, and significantly, the committee found that the defendants' cooperation did nothing whatsoever to further an ongoing investigation that would warrant the issuance of a 5K1.1 letter .... The United States Attorney's Office has taken the position that because there has been no arrest, no indictment, no complaint, no additional targets identified, nor any furtherance of any investigation, that substantial assistance was not, in its judgment, rendered.

(*Id.* at 2, 5.) At this point in this proceeding, the Court finds that this reason offered by the Government under the circumstances of this case is insufficient to justify its conduct. In cases where the Government has refused to make a motion for downward departure, the defendant had deceived the Govern-

ment, committed a crime, or otherwise breached the plea agreement. *See Fernandez,* 127 F.3d at 286 (Government's refusal to make a motion for a downward departure is reasonable where the defendant's lies and conduct "so undercut his credibility that the government would have been unable to use him as a witness at trial"); *Brechner,* 99 F.3d at 99–100 (Government's refusal to issue a 5K1.1 letter justified where the defendant's lies during period of cooperation about his own criminal involvement undermined his credibility as a potential government witness); *Pollack,* 91 F.3d at 335–36 (Government was justified in withholding the 5K1.1 letter where the defendant was in material breach of the agreement when he lied about his involvement in the arson); *Basket,* 82 F.3d at 47 ("At the sentencing hearing, the government stated that it declined to make a § 5K1.1 motion because although Basket had cooperated in some respects, he had in one instance obstructed justice."); *Resto,* 74 F.3d at 27 (Government's decision not to move for a downward departure was fair and made in good faith where the defendant breached the agreement by telling repeated lies about his past criminal history, both before and after entering into the cooperation agreement, and by committing the crime of bail-jumping); *Rexach,* 896 F.2d at 714–15 (Government refusal to move for downward departure due to absence by the defendant to make a good faith attempt to provide substantial assistance). However, in this case, the Government has not contended that the defendants breached their respective plea agreements or that the lack of cooperation justifies its decision not to provide 5K1.1 letters. Indeed, the Government has not elaborated on the details of the cooperation offered, or lack thereof, by the defendants. The Court has received only the defendants' skeletal account of their assistance.

In another important principle in this field of the law, the Government may not rely on circumstances of which it was aware at the time of the execution of the cooperation agreement as a reason for failing too issue a 5K1.1 letter. As the Second Circuit has stated,

[n]ot only would it be unfair for the government to rely upon such known, pre-agreement circumstances as reasons for not moving, it would have been fraudulent to have induced a defendant's plea with a promise that the government already knew it was not going to keep.

*Knights,* 968 F.2d at 1487. If the defendants' version of the events is to be credited, specifically, that the undercover investigation had failed to yield an arrest on a few previous occasions, then the Government was aware, prior to the execution of the cooperation agreements, that the defendants' aid in the investigation may prove futile. Such inherent risks must have been foreseeable to an entity as sophisticated, astute, and experienced as the United States Attorney's Office. The Court has no information from the Government to doubt the veracity of the defendants' rendition of their cooperation. Therefore, if the defendants did all that was requested of them and the possibility that the defendants' participation in the undercover investigation would yield no results was known prior to the execution of the cooperation agreements, then the Government cannot now use such lack of results to establish its good faith in refusing to issue the 5K1.1 letters.

 Furthermore, during oral argument, Assistant United States Attorney Bloch stated that the defendants' assistance yielded information that the suspect was acting in compliance with the law. The role of the United States Attorney is not only to prosecute offenders, but to act in the interest of justice to exculpate innocent persons. In this Court's view, if the defendants' cooperation resulted in the discovery of exculpatory rather than incriminatory information, the Government may not refuse to acknowledge the defendants' assistance because the fruits of their cooperation ultimately results in no prosecution. *See Khan,* 920 F.2d at 1105; *Knights,* 968 F.2d at 1488. The Guidelines provision states that

> [u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation *or* prosecution of another person who has committed an offense, the court may depart from the guidelines.

United States Sentencing Commission Guidelines Manual § 5K1.1 (emphasis added). To conclude that the Government's investigation was not "furthered" in any manner because information tending to demonstrate the lack of guilt of the suspect was disclosed as a result of the defendants' cooperation, is disingenuous and displays a disregard by the Government of a primary objective of its office and its responsibility to the public.

The Government's silence as to the details of the assistance provided by the defendants is troubling. Due to the paucity of facts of the defendants' cooperation offered by the Government, the Court is unable to conclude, at this time, whether the Government has acted in good faith in declining to move for a downward departure. Accordingly, the Court directs the Government to expand the record on the reasons it made its adverse determination regarding the defendants' assistance. In this regard, the Government shall file an affidavit with the Court which shall include, at minimum: (1) the details of the actual assistance the defendants have rendered to the Government; (2) the status of the investigation before and after the defendants provided their assistance; (3) when the investigation began; (4) whether and when any other individuals have rendered assistance of similar nature to that offered by the defendants and have been denied a 5K1.1 letter; (5) whether any individuals have entered into similar cooperation agreements and having similar results have been issued a 5K1.1 letter; and (6) what knowledge, or lack of knowledge, the Government or its agents had involving prior investigations of the target at issue. In addition, the Government is to submit a copy of the memorandum submitted by Assistant United States Attorneys Jonas and Bloch to the 5K Committee, recommending issuance of the 5K1.1 letters. Because the Court is requesting the Government to divulge information concerning an investigation which may still be continuing or is otherwise confidential, the Government shall make an *ex parte, in camera* disclosure on these subjects. Such submission shall be filed under seal for the purpose of appellate review.

The Court notes that it expresses no opinion at this time as to the weight, if any, to be given to the 5K1.1 letters should they be issued by the Government. However, whether the Government is obligated to provide the 5K1.1 letters pursuant to the cooperation agreements and the discretionary weight to be accorded to them by the Court, are two distinct issues. The Court will examine the Government's submissions *in camera* to determine whether there is any basis to conclude that, in the totality of the circumstances, the Government failed to act in good faith in refusing to provide 5K1.1 letters on the defendants' behalf under the guidelines or the statute, or whether a hearing is necessary.

### III. CONCLUSION

Having reviewed the submissions of the parties and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that decision is **RESERVED** on the defendants' motion for specific performance of their cooperation agreements with the Government or, in the alternative, to withdraw their guilty pleas, pending review by the Court of the Government's submission. The Government shall make such submission in conformity with this decision, within ten (10) days of April 24, 1998; and it is further

ORDERED, that the sentencings of the defendants are **ADJOURNED** to Friday, July 17, 1998 at 11 A.M. for Chandradutt Harpaul and 11:30 A .M. for Sewdutt Harpaul.

SO ORDERED.