UNITED STATES of America, Appellee,

v.

Fati BRAIMAH, Defendant–Appellant.

No. 1810, Docket 93–1045.

United States Court of Appeals,
Second Circuit.

Argued July 14, 1993.

Decided Aug. 26, 1993.

Georgia J. Hinde, New York City (Vivian Shevitz, of counsel), for defendant-appellant.

Emily Berger, Asst. U.S. Atty., Brooklyn, NY (Zachary Carter, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., of counsel), for appellee.

Before: MAHONEY, McLAUGHLIN, and JACOBS, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Fati Braimah appeals from a final judgment of the United States District Court for the Eastern District of New York (John R. Bartels, Judge), convicting her, upon her guilty plea, of one count of importing heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3). Braimah was sentenced to thirty-seven months' imprisonment and three years' supervised release.

Braimah argues that her sentence should be vacated because: (1) a condition in her

plea agreement precluding her from moving for a downward departure under the United States Sentencing Guidelines (the "Guidelines") is invalid; (2) the district court did not understand that it could depart downwards *sua sponte;* and (3) the district court did not apprise her at the plea allocution of the possibility of a downward departure. For the reasons stated below, we affirm.

## BACKGROUND

On February 24, 1992, Braimah, a Ghanaian national, was arrested upon her arrival at John F. Kennedy International Airport when customs inspectors found 450 grams of heroin in her handbag. She was indicted on one count of importing heroin, and one count of possessing with intent to distribute heroin under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i).

If convicted of either possession with intent to distribute or importation of more than 100 grams of heroin, Braimah faced a mandatory minimum sentence of five years' imprisonment. 21 U.S.C. § 960(b)(2)(A). Pursuant to a plea agreement, Braimah pleaded guilty to the lesser offense of heroin importation with no specification as to quantity, thereby avoiding the five-year mandatory minimum. In the plea agreement the government agreed: to dismiss the possession count, not to oppose any Probation Department finding that Braimah was a minimal participant and accepted responsibility, not to move for an upward departure, and to take no position on what sentence should be imposed within the Guidelines range. Braimah, in turn, agreed not to move for a downward departure. The agreement also contained a non-binding estimate that Braimah would probably have an adjusted offense level of 22 and a sentencing range of 41–51 months.

At the plea allocution, the district court advised Braimah of the constitutional rights she waived by pleading guilty. To ensure that she understood her possible sentence under the plea, the court advised her how the Guidelines worked. After assuring that Braimah had discussed with her lawyer how the Guidelines might apply to her case, the court warned that it had "the authority in some circumstances to impose a sentence that is more severe than the sentence called for by the" Guidelines, and that only a limited appeal from the sentence was available. It also informed her that she could not withdraw her guilty plea if she received a more severe sentence than she expected or if the court did not accept the sentencing recommendation in the plea agreement. The court also explained the statutory range, supervised release, restitution, mandatory special assessment and the possibility of deportation.

After the plea agreement was outlined for the court, Braimah pled guilty. Through extensive questioning, the district court concluded that Braimah knew the terms of the plea agreement, was not coerced into pleading guilty, had discussed her plea with her lawyer, and knowingly and voluntarily pled guilty with full awareness of the possible penalties. Then, after the court determined that the government had proof of Braimah's crime beyond a reasonable doubt, it accepted her plea.

The Probation Department then prepared a Pre–Sentence Report ("PSR") where it calculated an adjusted base offense level of 22 which, combined with Braimah's Criminal History Category of I, resulted in a sentencing range of 41 to 51 months, just as the plea agreement had envisioned. This computation resulted from a base offense level of 28, a two-point reduction for acceptance of responsibility and a four-point reduction for minimal role in the offense. The PSR further noted that Braimah had written to the Probation Department that she was the primary economic support for her family back in Ghana—including four small children, a mother and three younger siblings—and that she had committed the crime because of her poverty.

The district court opened the subsequent sentencing hearing by asking Braimah whether she or her counsel had "anything to say in explanation of [her] offense or in mitigation of the sentence to be imposed on [her]?" Braimah's counsel responded by requesting that sentencing be postponed until after November 1, 1992, so that Braimah could be afforded an extra point for acceptance of responsibility under a change in the

Guidelines that would take effect on November 1. Counsel also noted that: "She's got four children. She's a woman who did this under desperate circumstances." The court responded:

> Why didn't she think of that before she came in here and brought in this heroin? That's the same argument they all give me. When you do that you don't help yourself. We want to stop everyone from bringing narcotics into this country. How are you going to do it if you just listen to the situation. I can't help it. We've got to protect our country.

Because the government did not oppose Braimah's request to postpone sentencing to receive the third point, and because one of the three other judges who had reviewed Braimah's sentencing options pursuant to Eastern District policy recommended that it do so, the court granted the point immediately. This dropped Braimah's adjusted offense level to 21, with a corresponding sentencing range of 37–46 months. The following colloquy ensued:

> THE COURT: So that she has an offense level of 21 which carries with it an imprisonment range of 37 to 46 months. Under the circumstances, in accordance with the sentencing guidelines, the Court hereby sentences the defendant to ... confinement for a period of 21 months plus three years supervisory release....
>
> ....

Sensing that the court had confused the offense level (21) with the imprisonment range (37–46 months), the prosecution interrupted:

> [THE PROSECUTION]: Your Honor, I'm sorry.... It's a level 21 which is [sic] carries a range of 37 to 46 months. It's just a level 21.
> [DEFENSE COUNSEL]: Clearly defense counsel would not oppose the Court's finding of 21 months that is appropriate for this woman.
> THE COURT: She doesn't have a 5K1 letter. I'll impose 37 months.

Following sentencing, Braimah wrote to the court that her PSR incorrectly stated that her four children were with her husband and mother. She claimed instead that because her husband was poor, had many wives and mistreated her and her children, she had taken them to live with her mother. She further wrote to the court that she was the primary support of her children, mother and three younger siblings, and that since her incarceration her mother had been "arrested" because of Braimah's debts, her husband had remarried and taken the children, and her siblings were unable to attend school. Finally, she wrote that she had committed the crime because of her distressed financial condition and her desire to support her family.

The district court treated the letters from defendant as a motion to correct her sentence under Federal Rule of Criminal Procedure 35. The court then denied the motion, stating that even if it had known of the alleged errors, it would have imposed the same sentence. This appeal followed.

## DISCUSSION

Braimah's chief contention on this appeal is that the condition in her plea agreement which precluded her from moving for a downward departure was improper. Accordingly, she maintains, her sentence should be vacated and the case remanded for resentencing so that the district court may consider whether a downward departure is appropriate. See 18 U.S.C. § 3742(e)(1).

Braimah concedes, as she must, that it is not inherently unjust to require a defendant to waive certain rights as a condition of a plea. See, e.g., United States v. Salcido–Contreras, 990 F.2d 51, 51–52 (2d Cir.) (upholding plea agreement condition requiring defendant to waive his right to appeal), cert. denied, — U.S. —, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993). Given that defendants can waive elemental constitutional and statutory rights, there is no reason why defendants should not be able to waive their less fundamental prerogative to request a downward departure. Indeed, this Court has approved "sentence" plea agreements pursuant to Fed.R.Crim.P. 11(e)(1)(C), under which a defendant effectively waives his right to request a downward departure. See Unit-

ed States v. Cunavelis, 969 F.2d 1419, 1422–23 (2d Cir.1992) (upholding Rule 11(e)(1)(C) "sentence" bargain); cf. United States v. Pimentel, 932 F.2d 1029, 1033–34 (2d Cir.1991) (discussing utility of Rule 11(e)(1)(B) and (C) "sentence" bargaining under Guidelines).

Braimah contends, however, that a condition precluding a defendant from moving for a downward departure improperly intrudes on a district court's obligation to consider all relevant factors in sentencing, as required by 18 U.S.C. § 3661:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

This argument is fundamentally flawed. As Braimah's counsel conceded at oral argument, the condition precluding her from moving for a downward departure did not prevent Braimah from telling the court about her background, character or conduct. The condition also did not prevent her from advising the court of its ability to depart downwards sua sponte. Moreover, in arguing that Braimah should get a third point for acceptance of responsibility, her counsel made the court aware of Braimah's purportedly dire straits, stating that she had four young children and committed the offense "under desperate circumstances," and later adding that she smuggled to "relieve her debt" in Ghana. There was, therefore, no violation of § 3661.

■ In a cognate argument, Braimah contends that her sentence should be vacated because the district court erroneously believed that it had no authority to grant a downward departure sua sponte. Specifically, she points to the exchange that occurred at the end of the sentencing hearing when the district court momentarily seemed to confuse Braimah's offense level with her sentencing range and stated that the sentence would be 21 months. The government immediately advised the court of its mistake and defense counsel indicated that it would not object to a 21–month sentence. The court replied: "She doesn't have a 5K1 letter. I'll

impose 37 months." Braimah contends that in light of the fact that she could not, and did not, make a downward departure motion, the court's reply indicates the court's mistaken belief that it lacked the authority to make a downward departure absent a letter from the government under § 5K1.1 of the Guidelines, an error that would require a remand for reconsideration of the sentence. See United States v. Speenburgh, 990 F.2d 72, 75 (2d Cir.1993); United States v. Ritchey, 949 F.2d 61, 63 (2d Cir.1991); United States v. Sharpsteen, 913 F.2d 59, 63 (2d Cir.1990).

While this argument has some force, we are not persuaded that the court's isolated comment is dispositive. Rather, other factors indicate that the court was aware of Braimah's specific circumstances and found that they were not sufficient to justify a downward departure. The court opened the sentencing proceeding by permitting Braimah to state anything she wished "in mitigation of the sentence to be imposed." The court also made clear that, pursuant to Eastern District policy, it had discussed the proper sentence with three other judges. The discussion presumably included all of Braimah's circumstances and the possibility of a downward departure. Moreover, when Braimah's counsel informed the court of her client's family circumstances, the court responded that she should have "th[ought] of that before she came in here and brought in this heroin." In a similar fashion, it rejected her post-trial requests for a reduction of her sentence based on her family circumstances. In light of these factors, we are certain that the district court was fully aware of its right to depart downwards but chose not to do so.

■ Braimah's final argument is that the district court violated Federal Rule of Criminal Procedure 11(c)(1) by not advising her of the possibility of a downward departure. Rule 11(c)(1) requires that a court inform a defendant that it "may depart from [the] guidelines." Braimah points out that the district court stated only that it could impose a sentence "more severe" than that in the Guidelines and never discussed the possibility of a downward departure. Thus, she argues, her plea was not "knowing," and must

be vacated. *See, e.g., United States v. Fernandez,* 877 F.2d 1138, 1143 (2d Cir.1989) (Rule 11 requires "that a guilty plea represents a voluntary and intelligent choice for the defendant").

We reject this argument. An examination of the plea colloquy reveals that the district court thoroughly discussed the ramifications of Braimah's plea and assured itself that she understood its consequences. Braimah's counsel advised the court that she had discussed the Guidelines with Braimah, and Braimah told the court that she had discussed her guilty plea with counsel. Since both the Guidelines and the agreement address downward departures, those discussions certainly must have included a consideration of them. Moreover, any failure to notify Braimah of the possibility of a downward departure was harmless because she was bound by the agreement not to move for a downward departure, and any unanticipated downward departure *sua sponte* could only have benefitted her. Accordingly, we reject her argument that her plea was not knowing for purposes of Rule 11.

CONCLUSION

The judgment of the district court is affirmed.