UNITED STATES of America, Appellee,

v.

Lancelotte KAYE, Defendant–Appellant.

No. 889, Docket 94–1381.

United States Court of Appeals,
Second Circuit.

Argued Jan. 24, 1995.

Decided Sept. 5, 1995.

**241**

Allan Sturim, Kew Gardens, (Sturim & Nizin, Kew Gardens, of counsel), for defendant-appellant.

* Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by

Douglas T. Burns, Assistant U.S. Attorney for the E.D.N.Y. (Peter A. Norling, Assistant U.S. Attorney, Zachary W. Carter, U.S. Attorney for the E.D.N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND and WINTER, Circuit Judges, and KAPLAN, District Judge.*

WINTER, Circuit Judge:

Lancelotte Kaye appeals from a sentence imposed by Judge Mishler after Kaye pleaded guilty to possession of firearms with obliterated serial numbers that had been shipped in interstate or foreign commerce in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B) and 3551 et seq. This appeal involves an unusual set of facts. In the district court, the Assistant United States Attorney ("AUSA") declined to move for a downward departure pursuant to Guidelines Section 5K1.1, apparently because Kaye's cooperation with federal authorities failed to produce a federal prosecution and Kaye had received a substantial benefit in the form of a reduced sentence on a state charge based on his assistance to local law enforcement authorities. However, the AUSA invited the court to consider a downward departure under Section 5K2.0 based upon Kaye's assistance to local authorities. The district court declined to consider a departure on the ground that it had no authority to depart based on such assistance absent a motion by the government under Section 5K1.1. On appeal, the government asks us to affirm. We do so.

Kaye was arrested on April 13, 1993 by law enforcement agents from the Nassau County Police Department ("Nassau P.D.") and from the Bureau of Alcohol, Tobacco and Firearms ("BATF"), who were participating in a joint undercover investigation. Kaye was indicted on drug charges in the County Court of Nassau County and on federal weapons charges in the Eastern District of New York.

Kaye entered into cooperation agreements with the Nassau County District Attorney

designation.

and with the BATF. Pursuant to these agreements, Kaye covertly recorded conversations with various individuals, apparently at some personal risk. As a result of Kaye's cooperation, two individuals were arrested by the Nassau P.D., one of whom pleaded guilty to a Class A misdemeanor. In Nassau County Court, Kaye pleaded guilty to a Class E felony and was sentenced, *inter alia,* to time served or 25 days in jail.

Kaye's assistance to federal authorities included the tape-recording of phone conversations with the individual who had sold him weapons. Kaye also met with that individual and provided the BATF with his first name, telephone number, and home address. Nevertheless, no other arrests were made.

In the district court, Kaye pleaded guilty to possession of firearms with obliterated serial numbers. In connection with Kaye's sentencing, the government declined to move for a downward departure pursuant to U.S.S.G. § 5K1.1, which allows a sentencing court to depart from the Guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." In a letter to the court, the AUSA acknowledged that Kaye had cooperated in Nassau County and stated that Kaye had received the benefit of a light sentence in return. The letter went on to note that "Kaye also attempted to cooperate federally." However, the AUSA continued, "the fact remains that the [federal] effort was ultimately unsuccessful. As such, the government cannot certify in connection with the federal prosecution that, 'the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense....' "

However, the AUSA suggested the possibility of a downward departure pursuant to U.S.S.G. § 5K2.0, which authorizes a sentencing court to depart from the Guidelines where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." The AUSA's letter stated, "The cooperation issue in this case is nonetheless an unusual one," and "if Kaye asks the Court to consider guidelines section 5K2.0 in formulating and in imposing sentence in this case, ... we would state no position with respect to that request." Kaye then requested a downward departure, but the district court ruled that it had no authority to consider Kaye's assistance to local authorities under Section 5K2.0, stating: "I know he cooperated and as a matter of fact his cooperation was of so[me] benefit, but absent a motion by the United States government under 5K1.1, I have no authority [to downwardly depart]." It then sentenced Kaye to 12 months imprisonment, three years supervised release and a $50 special assessment.

On appeal, the government has abandoned its position that a downward departure under Section 5K2.0 is permissible based on Kaye's cooperation with local authorities. It reasons that Section 5K1.1 encompasses cooperation with local as well as federal authorities and that a motion under that Section is the sole means by which a departure based on any assistance to law enforcement authorities may be granted. Because a decision not to move for such a departure is essentially unreviewable, the government argues, we must affirm Kaye's sentence.

■ We agree with the government that the effect of cooperation with local authorities is governed by Section 5K1.1. The plain language of the section encompasses all law enforcement authorities whatever governmental unit they represent, and nothing in the Commentary even remotely suggests that the all-inclusive language was not deliberate. Therefore, a motion by the government under Section 5K1.1 is necessary before a court may depart from the Guidelines based on assistance to state or local, as well as federal, authorities. *See United States v. Love,* 985 F.2d 732, 734 (3d Cir.1993); *see also United States v. Emery,* 34 F.3d 911, 913 (9th Cir.1994).

■ In reviewing a prosecutor's decision whether to make a motion under Section 5K1.1, we differentiate between defendants who have cooperated pursuant to a plea agreement and those who have not. *See United States v. Leonard,* 50 F.3d 1152, 1157

(2d Cir.1995); *United States v. Knights,* 968 F.2d 1483, 1486 (2d Cir.1992). Those defendants who have signed agreements in which the government promised to make a 5K1.1 motion in exchange for substantial assistance are entitled to a "more searching" review of a claim that the government should have, but did not, make such a motion. *Leonard,* 50 F.3d at 1157. Under those circumstances, we hold the government to a standard of good faith. *Id.; United States v. Agu,* 949 F.2d 63, 67 (2d Cir.1991), *cert. denied,* 504 U.S. 942, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992); *United States v. Khan,* 920 F.2d 1100, 1105–06 (2d Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (2d Cir.1991). Where no such plea agreement was signed, however, our review is limited to whether the government's decision not to make a 5K1.1 motion was based on an unconstitutional motive. *See Wade v. United States,* 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992); *Leonard,* 50 F.3d at 1157.[1] Kaye signed a document labelled "Informant Agreement" in which he agreed to cooperate with the BATF, but neither the BATF nor the AUSA made any reciprocal promise relative to his sentence. Our review of the government's actions is thus governed by the Supreme Court's holding in *Wade,* which concerned a defendant who cooperated without the benefit of a plea agreement.[2]

■ In *Wade,* the Supreme Court held that a court may not inquire into the govern-ment's failure to make a motion unless there is a "substantial threshold showing" of an "unconstitutional motive," such as the race or religion of the defendant, or a lack of any rational relationship to a legitimate governmental goal. *Wade,* 504 U.S. at 185–86, 112 S.Ct. at 1843–44. Here, Kaye has made no showing of an unconstitutional motive. Nor can we say that the government's failure to move under Section 5K1.1 was not rationally related to a legitimate governmental purpose, namely not to overcompensate Kaye, who had already reaped the benefit of a lenient state sentence based on his cooperation with local authorities.

■ The only remaining question is whether a district court has authority to depart downward under Section 5K2.0 when invited to do so by the government notwithstanding the fact that, absent such an invitation, consideration of a downward departure would be beyond the court's authority. We believe that the district court does not have such authority. The Guidelines are mandatory,[3] *see United States v. DeRiggi,* 45 F.3d 713, 716 (2d Cir.1995), and the court's consideration of a downward departure, even if invited by the government, would necessarily be governed by their terms. Under the Guidelines, a downward departure under Section 5K2.0 based on assistance to local authorities would be impermissible because the very existence of Section 5K1.1 dooms any contention that Kaye's assistance was a

---

1. We have previously held that a prosecutor's decision whether to make a motion pursuant to Section 5K1.1 generally is "not subject to judicial review at all" absent the existence of a plea agreement in which the government agreed to make such a motion. *See United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Huerta,* 878 F.2d 89, 93 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). However, this rule has been modified by *Wade's* holding that the government's decision may not be unconstitutionally motivated.

2. We need not therefore decide whether the government's failure to make a Section 5K1.1 motion was in bad faith based upon its concession to the district court that Kaye had provided substantial assistance to local law enforcement authorities.

3. Different considerations may apply where a plea agreement designates a specific sentence. Fed.R.Crim.P. 11(e)(1)(C) provides that the government may "agree that a specific sentence is the appropriate disposition of the case." We have held that a court may "accept or reject ... [but] may not modify" an agreement calling for a specific sentence, even if the sentence does not comport with the Guidelines. *See United States v. Cunavelis,* 969 F.2d 1419, 1422 (2d Cir.1992) (plea agreement executed pursuant to Fed. R.Crim.P. 11(e)(1)(C) is "binding on the district court" in that if the court accepts the agreement, it must conform the sentence to that bargain); *see also United States v. Braimah,* 3 F.3d 609, 611–12 (2d Cir.1993) (noting that in a "sentence" plea agreement under Fed.R.Crim.P. 11(e)(1)(C), the defendant effectively waives his or her right to request a downward departure). No such plea agreement exists in the instant matter.

"mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines."

We therefore affirm.

KAPLAN, District Judge, dissenting:

I respectfully dissent. In my view, there is no indication that the Sentencing Commission adequately considered assistance to State and local law enforcement authorities in formulating Section 5K1.1 of the Sentencing Guidelines. In consequence, the sentencing judge was mistaken in believing that he lacked power, absent a motion by the United States Attorney pursuant to Section 5K1.1, to consider whether to depart downward pursuant to Section 5K2.0 on the basis of appellant's extensive cooperation with State and local authorities.

Section 5K2.0 of the Guidelines authorizes the imposition of a sentence outside the Guidelines range "if the Court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0, *quoting* 18 U.S.C. § 3553(b); see *Williams v. United States,* 503 U.S. 193, 199, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992). In consequence, the issue for us is whether the Commission, in formulating Section 5K1.1 and thus in requiring a motion by the United States Attorney as a prerequisite to a downward departure based on assistance to law enforcement authorities, adequately considered assistance to State and local authorities.

The language of Section 5K1.1, as the majority points out, is extremely broad and most assuredly could embrace assistance to State and local authorities. Yet both the provenance of the language and the different considerations relevant to departures based on assistance to federal and to State and local authorities, respectively, suggest that the breadth of language is misleading and that the Commission did not adequately consider the matter.

To begin with, the broad language on which the majority relies was appropriated in *haec verba* in all material respects from 18 U.S.C. § 3553(e), which gives the courts authority, upon motion of the government, to impose a sentence below a statutorily prescribed minimum when a defendant provides "substantial assistance in the investigation or prosecution of another person who has committed an offense." Not only was the language simply adopted, without any evidence of independent consideration by the Commission of this matter, but there is nothing in the legislative history to suggest that Congress had considered or resolved the question as it relates to departures from mandatory minima. Hence, it is doubtful that the Commission properly may be regarded as having adopted a Congressional judgment on the issue.

If there were no material difference in the considerations applicable to departures based on assistance to federal versus State and local authorities, the apparent lack of explicit consideration of the two situations would be of no moment. But there is an arguably material difference.

The policy underlying Section 5K1.1 and its requirement of a motion by the United States Attorney as a prerequisite to a downward departure for assistance is straightforward. It vests the responsibility for determining whether the defendant has provided "substantial assistance" in the prosecutor rather than the sentencing court based on the premise that the United States Attorney is better able to evaluate that assistance than the sentencing judge. *See, e.g., United States v. Cheng Ah–Kai,* 951 F.2d 490, 494 (2d Cir.1991); *see also* U.S.S.G. § 5K1.1, App. Note 3.

The accuracy of this premise in the case of assistance to federal authorities is almost self evident. The United States Attorneys, by virtue of their frequent involvement in federal investigations and relationships with federal investigative agencies, almost invariably are in a better position than the court to evaluate the defendant's cooperation with federal law enforcement activities. The same cannot be said, however, for their ability to evaluate cooperation with State and local efforts. In some cases, particularly situations involving joint federal-state efforts, they will be better situated than the sentenc-

ing court.[1] In other circumstances, they will have no advantage at all. Thus, a reasoned judgment to treat the two situations differently seems entirely possible.

It is, of course, for the Sentencing Commission to determine this question and, once it resolves it, for the courts to adhere to its judgment. Congress, however, has defined with precision the sources to which we may turn in determining what the Commission has considered. Section 3553(b) provides that in determining what the Commission has considered, "the courts shall consider *only* the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b) (emphasis added). The breadth of language of Section 5K1.1 is not compelling in view of the fact that it appears to have been lifted wholesale from a statute which similarly did not address the issue. There is nothing else in the guidelines, policy statements and official commentary that demonstrates consideration of the question by the Commission. In consequence, I believe the sentencing judge had the power to consider a downward departure under Section 5K2.0.

1. In this case, the United States Attorney probably was in a position superior to that of the sentencing court because appellant cooperated with a joint BATF–Nassau County investigation. This, however, goes to the weight the sentencing court might attach to the government's views rather than to the sentencing court's power to depart.