99 F.3d 400
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee
v.
Raul MARCEL, Defendant.
Raul Lobos, also known as Raul Oliviera, also known as Raul
Lobos-Oliviera and Juan Xavier Huerl Guerrero,
also known as Xavier Uriel, Defendants-Appellants.
 Nos. 95-1099, 95-1133.
 United States Court of Appeals, Second Circuit.
 Dec. 8, 1995.
 
 1
 APPEARING FOR APPELLEE: JULIE A. CLARK, Brooklyn, NY, for Raul Lobos.
 
 
 2
 FRANCISCO SERRANO-WALKER, New York, NY, for Juan Xavier Hurel-Guerrero.
 
 
 3
 MICHELE R.M. CAMPBELL, Assistant United States District Attorney, Eastern District of New York.
 
 
 4
 Before ALTIMARI, JACOBS, Circuit Judges, and CONNER, District Judge.
 
 
 5
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 6
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 7
 Defendants Raul Lobos and Juan Xavier Hurel Guerrero appeal from their convictions in the United States District Court for the Eastern District of New York (Trager, J.), following guilty pleas to conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). For the reasons set forth below, we affirm both convictions.
 
 
 8
 On May 18, 1993, Lobos transported 20 kilograms of cocaine from Puerto Rico to New York. On May 28, 1993, other participants in the conspiracy brought another 15 kilograms to New York. Lobos was also scheduled to transport drugs on that trip, but he became fearful of discovery and abandoned his participation for that day.
 
 
 9
 On August 15, 1993, four suitcases were transported to New York, each containing 13 kilograms of cocaine. Lobos and Marcel (who pled guilty and cooperated with the Government) took two of the suitcases. Two women, Scott and Garcia, took the other two suitcases. An employee at the San Juan, Puerto Rico, airport named Hurel provided the four with colored stickers to put on the suitcases to avoid inspection. Upon their arrival in New York, Scott and Garcia plus two other co-conspirators were arrested. With the cooperation of those arrested, the police later apprehended Lobos, Hurel, and Marcel. In August 1994, Lobos and Hurel were indicted on various drug charges. On September 9, 1994, Lobos and Hurel both pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine.
 
 
 10
 On February 10, 1995, a Fatico hearing was held for both Lobos and Hurel; Marcel and one other co-conspirator, Osorio, testified for the Government.
 
 
 11
 Lobos: Lobos' sole claim on appeal is that the district court erred in finding at his Fatico hearing that his crime involved more than 50 kilograms of cocaine for sentencing purposes. Lobos does not dispute the 20 kilograms he carried on May 18, 1993, or the 13 kilograms he carried on August 15, 1993, a total of 33 kilograms. Lobos complains that the district court incorrectly added in the 26 kilograms carried by Scott and Garcia, bringing the total over 50 kilograms.
 
 
 12
 Lobos contends there is no record support for the finding that Lobos knew Scott and Garcia were carrying 26 kilograms. At the Fatico hearing, Lobos denied knowing anything about the women on the August 15 trip. Marcel, however, testified that Lobos told him at the Philadelphia airport that Scott and Garcia were also transporting cocaine. Essentially, Lobos argues that the district court erred in crediting Marcel's testimony and discrediting Lobos' testimony at the Fatico hearing, because Marcel's testimony did not demonstrate Lobos' knowledge by a preponderance of the evidence.
 
 
 13
 Disputed facts supporting a sentence need only be proven by a preponderance of the evidence. United States v. Rodriguez-Gonzalez, 899 F.2d 177, 182 (2d Cir.), cert. denied, 498 U.S. 844 (1990). When reviewing a sentence imposed under the Sentencing Guidelines, this Court "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e); United States v. Lanese, 890 F.2d 1284, 1291 (2d Cir.1989), cert. denied, 495 U.S. 947 (1990). We are "particularly hesitant" to disturb a district court's findings when they are based on an assessment of the credibility of witnesses. United States v. Thai, 29 F.3d 785, 814 (2d Cir.), cert. denied, 115 S.Ct. 456 (1994) & 115 S.Ct. 496 (1994).
 
 
 14
 In calculating Lobos' appropriate base offense level, the district court was entitled to include all quantities of cocaine involved in the conspiracy that were known or reasonably foreseeable to Lobos. U.S.S.G. § 1B1.3(a)(1)(B). See also United States v. Rivera, 971 F.2d 876, 892-93 (2d Cir.1992); United States v. Joyner, 924 F.2d 454, 459 (2d Cir.1991).
 
 
 15
 Lobos concedes that 33 kilograms may be attributed to him. It is undisputed that Lobos knew Marcel and traveled with him on August 15, 1995. Marcel testified that Lobos told him on that trip that Scott and Garcia were also carrying cocaine. Although this was contradicted by Lobos, it was not unreasonable for the district court to credit Marcel's testimony, discount Lobos' denial, and conclude that Lobos did in fact know that Scott and Garcia were transporting cocaine. The attribution to Lobos of the 26 kilograms carried by Scott and Garcia brings the total to more than 50 kilograms, which corresponds to the base offense level of 36 used by the district court to calculate the sentence. We therefore affirm the district court with respect to Lobos' conviction.
 
 
 16
 Hurel: Hurel appeals from his conviction on the grounds that (1) his plea was not a voluntary, knowing, and intelligent waiver of his constitutional rights, because of a material misrepresentation of the evidence by the prosecutor, and (2) the plea lacked a factual basis and thereby violated Federal Rule of Criminal Procedure 11.
 
 
 17
 Hurel points to a DEA form showing that $30,000 was paid at $1,500 per kilogram of cocaine, and complains that, for the first time at the Fatico hearing, the Government said that the form was incorrect and that the rate of payment was actually $1,000 per kilogram. Hurel also claims that the Government had said it thought he was paid about $60,000 at $1,500 per kilogram, but that, at the Fatico hearing, the Government for the first time claimed Hurel had received $80,000 at $1,000 per kilogram. These changes in calculation resulted in a higher offense level for sentencing purposes. Hurel also claims that the Government wrongfully concealed from him that a co-defendant, Arias, had withdrawn his guilty plea and would not testify against Hurel. Hurel claims that all of these incidents were material misrepresentations that render his plea defective.
 
 
 18
 Hurel does not explain why these contentions undermine the voluntariness of his plea. This Court typically looks at the colloquy of the plea proceeding to determine whether a guilty plea was knowing, intelligent, and voluntary. See, e.g., United States v. Braimah, 3 F.3d 609, 613 (2d Cir.1993). Where the plea colloquy shows that the district court advised defendant of his rights, obtained his knowing and voluntary waivers of all of those rights, advised him of the nature of the charges against him, and obtained his assent to the factual basis of those charges, the plea is valid. United States v. Lora, 895 F.2d 878, 881 (2d Cir.1990). A review of the plea proceedings shows that the district court verified that Hurel's plea comported with these requirements. It was therefore voluntary. Furthermore, based on the fact that Hurel was found to have conspired to distribute more than 50 kilograms of cocaine, he was sentenced to 151 months imprisonment, which was within the range contemplated by his plea bargain.
 
 
 19
 Hurel also claims that his plea was not voluntary, because he was promised a sentence of eight years, and no more than ten years. This is flatly contradicted by the plea bargain and the plea proceedings.
 
 
 20
 Finally, Hurel claims his plea was defective because he admitted to distributing only 20 kilograms of cocaine, not 50 to 150 kilograms. The quantity of cocaine involved is not an element of Hurel's offense that must be allocuted; it is relevant only to determining sentence. See United States v. Campuzano, 905 F.2d 677, 679 (2d Cir.), cert. denied, 498 U.S. 947 (1990).
 
 
 21
 For these reasons, we also affirm Hurel's conviction by the district court.