David MILLER, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 00–2495.

United States Court of Appeals, Second Circuit.

Oct. 11, 2001.

Vivian Shevitz, South Salem, NY; Jane Simkin Smith, on the brief, for appellant.

Michael G. McGovern, Assistant United States Attorney, for Mary Jo White, United States Attorney, Southern District of New York, New York, NY; Christine H. Chung, Assistant United States Attorney, Southern District of New York, on the brief, for appellee.

Present McLAUGHLIN, POOLER, Circuit Judges, SAND, District Judge.*

### SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Petitioner/Appellant David Miller appeals from an order of the United States District Court for the Southern District of New York (Scheindlin, *J.*) that denied his application for an order "correcting" his sentence pursuant to 28 U.S.C. § 2255.

On May 25, 1999, Miller, armed with a gun, robbed the West 62nd St branch of the Bank of New York. After his apprehension and after receiving *Miranda* warnings, Miller confessed to that robbery, four other robberies in New York, and two robberies in Washington, D.C. A grand jury sitting in the Southern District charged Miller with one count of bank robbery and one count of armed bank robbery based on the West 62nd St. robbery.

On July 28, 1999, Miller entered into a written plea agreement containing the following relevant provisions: (1) Miller would plead guilty to a superseding information charging him with five counts of bank robbery and two counts of armed bank robbery; (2) Miller waived any venue objection to conviction on the District of Columbia robberies; (2) pursuant to a U.S.S.G. § 3D1.4 grouping analysis, the combined offense level for the seven robberies was 28, which, coupled with Miller's criminal history category of I, resulted in a sentencing range of 78 to 97 months of imprisonment; (3) neither the Probation Department nor the court was bound by the Guidelines range stipulation, and, in the event that the court or the Probation Department contemplated adjustments or departures, each party had the right to supply facts and answer inquiries relevant to the adjustment or departure; however, (4) neither party would request a departure or suggest to the Probation Department or the court that a departure was appropriate; and (5) both parties waived their right to appeal from a sentence imposed within the stipulated range, and Mil-

---

* The Honorable Leonard B. Sand, Senior United States District Court Judge for the District of New York, sitting by designation.

ler also waived his right to bring a Section 2255 proceeding to contest a sentence within the stipulated range.

Miller entered his plea before Magistrate Judge Theodore H. Katz, who questioned Miller carefully concerning the voluntariness of the plea. In response to Judge Katz' questions, Miller said that he was not taking any kind of medication, had never been treated for substance or alcohol abuse, was not under the care of a physician, and was feeling fine. Miller also said that he had a Bachelor's degree and two years of graduate study. He understood the Sentencing Guidelines after having discussed them with his attorney and acknowledged that he knew the agreement provided he could neither seek a departure nor appeal. After this colloquy with the court, Miller specifically admitted to the seven robberies mentioned in the plea agreement.

At sentencing, Judge Shira Scheindlin indicated dissatisfaction with the portion of the plea agreement that barred Miller's attorney from advocating for a departure. She also asked defense counsel whether Miller received any benefit from the agreement, saying, "if he simply pled guilty to seven counts of bank robbery without a plea agreement, he would be in the same place, but you could be advocating." Miller's attorney answered that "[t]here was very limited benefit" in that the agreement covered all seven robberies, and "[a]s he understood the Guidelines ..., the maximum number of additional points was five as opposed to seven; as opposed to if they were charged separately and prosecuted separately, arguably, in a different jurisdiction with a different judge, it might have been calculated in a manner that would have been less favorable." Defense counsel also explained that "it was the expression of what my client wanted to do in the case, in the sense that [he] question[ed] his religious or his moral sense of

doing what he did." After finding that the plea agreement did give Miller a benefit, the judge considered departure on the basis of extraordinary acceptance of responsibility and aberrant behavior but ultimately determined that a sentence of 78 months of imprisonment at the bottom of the applicable range was appropriate.

Miller did not file an appeal; however, on March 31, 2000, he moved for correction of his sentence, claiming that he was denied effective assistance of counsel because "the terms of the plea agreement prevented defense counsel from effectively assisting his client because he was forbidden to advocate downward departure." Judge Scheindlin found that Miller's waiver of his right to appeal or make a Section 2255 motion was knowing and voluntary. *Miller v. United States*, 00–2469, 2000 WL 1050584, *3 (S.D.N.Y. July 28, 2000). Finding that Miller, by entering into a plea agreement that disposed of all the charges, avoided the possibility of the District of Columbia district court imposing a sentence consecutive to the one she imposed, Judge Scheindlin also found that Miller's trial counsel was not ineffective when he advised Miller to accept the government's offer. *Id.* at 5. She therefore denied his motion. *Id.*

On appeal, Miller argues that the district court erred in finding that ineffectiveness of counsel did not render his plea agreement involuntary. More specifically, he contends that his counsel should have explained to him that it was very unlikely that the District of Columbia court would sentence him consecutively to the sentence imposed in the Southern District. However, Miller did not allege either in his petition or in the memorandum attached to it that his trial attorney failed to inform him of potential departures or discuss what might happen in a District of Columbia prosecution. These claims are made only

in his current attorney's brief. In order to trigger a right to a hearing in an ineffective assistance of counsel case, the petitioner must "establish that he has a 'plausible' claim of ineffective assistance of counsel." *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir.1993) (citations omitted). Absent specific allegations concerning the advice Miller's attorney gave him, Miller simply fails to allege a plausible basis for an ineffective assistance counsel claim. As the district court noted, Miller's plea foreclosed the possibility of consecutive sentencing, and U.S.S.G. § 5G1.3(c) gives the district court wide latitude to impose consecutive, concurrent, or partially concurrent sentences.

Miller also argues that the plea agreement should be invalidated, in part, because the combined effect of his inability to appeal any sentence in the stipulated range and his counsel's inability to advocate for a departure rendered the agreement unconscionable in light of the limited and speculative benefit he received. He does not seek, however, to withdraw his plea. We have long upheld a defendant's knowing and voluntary waiver of his right to appeal a sentence in the Guidelines range. *See, e.g., United States v. Garcia*, 166 F.3d 519, 521 (2d Cir.1999) (collecting cases). Nor was the agreement not to seek a downward departure unconscionable. *United States v. Braimah*, 3 F.3d 609, 611 (2d. Cir.1993). Miller's contention that we should distinguish *Braimah* on the basis that the defendant in that case was permitted to inform the court of its right to depart *sua sponte* and he was not is unpersuasive because, among other reasons, the court clearly was aware of its ability to depart on its own motion.