[Cite as *State v. Grove*, 2016-Ohio-2721.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103042**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# THOMAS P. GROVE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-587579-A

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** April 28, 2016

**ATTORNEY FOR APPELLANT**

Mary Catherine O'Neill
50 Public Square
Suite 1900
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Jeffrey Schnatter
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Thomas P. Grove, appeals his conviction for rape, attempted rape, kidnapping, and pandering sexually oriented matter involving a minor. For the reasons that follow, we affirm.

## Procedural History and Substantive Facts

{¶2} On July 24, 2014, Grove was charged in an eight-count indictment involving two victims: (1) rape of Victim 1 in violation of R.C. 2907.02(A)(2), with one- and three-year firearm specifications and a sexually violent predator specification (Count1); rape of Victim 1 in violation of R.C. 2907.02(A)(2), with one- and three-year firearm specifications and a sexually violent predator specification (Count 2); rape of Victim 1 in violation of R.C. 2907.02(A)(2), with one- and three-year firearm specifications and a sexually violent predator specification (Count 3); kidnapping of Victim 1 in violation of R.C. 2905.01(A)(4), with one- and three-year firearm specifications, a sexually violent predator specification, and a sexual motivation specification (Count 4); rape of Victim 2 in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification (Count 5); kidnapping of Victim 2 in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification and a sexual motivation specification (Count 6); unlawful sexual conduct with a minor, Victim 2, in violation of R.C. 2907.04(A) (Count 7); and pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5) (Count 8).

**{¶3}** On August 18, 2014, the court found Grove not competent to stand trial, based upon an evaluation prepared by the court psychiatric clinic. In this evaluation, Dr. Jennifer Franklin opined that within reasonable psychological certainty, Grove was not capable of assisting in his defense. Both the state and defense counsel stipulated to Dr. Franklin's findings and the court ordered Grove to Northcoast Behavioral Healthcare Center ("Northcoast") for restoration to competency.

**{¶4}** On November 19, 2014, the court held another hearing to address Grove's competency. According to a report prepared by Dr. Gruber of Northcoast, Grove was capable of assisting in his defense and was capable of understanding the nature and objectives of the proceedings against him. The report also indicated that Grove was malingering. After some discussion regarding the evaluation, defense counsel informed the court that Grove was not receiving his medication in the jail and he appeared confused or "distant." Defense counsel, however, did not object to the report as it pertained to the malingering. The court continued the hearing in order to address the issue with Grove's medication.

**{¶5}** On December 17, 2014, the court held another competency hearing. At this time, defense counsel submitted another psychological evaluation report, which was prepared by Dr. J. Joseph Konieczny in November 2012 for determination of Grove's social security benefits. This report indicated that Grove suffers from borderline intellectual functioning and disruptive behavior disorder not otherwise specified, has an IQ of 73, and has a history of involvement in the juvenile and adult criminal justice

systems. In light of this report, defense counsel requested an independent psychological examination, "as a precaution." Thereafter, the court ordered the independent examination and a report on malingering, and it advised defense counsel that he should instruct his client to be compliant with his medication, as he was disciplined in the county jail for hoarding his medications.

{¶6} On February 17, 2015, the court held a hearing following receipt of the independent forensic neuropsychological and psychological evaluation prepared by Dr. John Fabian. In his report, Dr. Fabian opined that Grove "has been consistently malingering psychosis and low cognitive functioning." Dr. Fabian reported that "[w]hile he likely qualifies for ADHD by history and borderline intellectual functioning, I cannot say with a reasonable degree of psychological and neuropsychological certainty that he qualifies for a mental condition under the competency to stand trial statute or a severe mental disease or defect under the sanity statute." Dr. Fabian therefore concluded that there is no indication that Grove is not competent to stand trial or that he was insane at the time of the alleged offenses. Defense counsel noted that Dr. Fabian's findings concurred with the court psychiatric clinic's earlier evaluation, and he accepted the findings contained in Dr. Fabian's report. The state also accepted the findings in the report. The court found Grove sane and competent to stand trial.

{¶7} On March 11, 2015, Grove withdrew his previously entered not guilty plea and entered into a plea agreement with the state. Under the agreement, Grove pleaded guilty to rape in amended Count 1, whereby the firearm specifications and the sexually

violent predator specifications were deleted. He pleaded guilty to kidnapping in amended Count 4, whereby the firearm and sexually violent predator specifications were again deleted. Grove also pleaded guilty to amended Count 5, whereby the charge became attempted rape. Finally, Grove pleaded guilty to pandering sexually oriented matter involving a minor in Count 8 as charged. The remaining charges were nolled.

{¶8} After conducting a colloquy with Grove in accordance with Crim.R. 11 and advising Grove of his nonconstitutional and constitutional rights, the trial court accepted Grove's guilty plea, finding that it was knowingly, intelligently, and voluntarily made. The court found Grove guilty of the charges and ordered a presentence investigation report (PSI). On a later date, the court sentenced Grove to ten years imprisonment on Count 1 (rape, merging with kidnapping in Count 4), six years imprisonment on Count 5 (attempted rape), and 18 months imprisonment on Count 8 (pandering). The court ordered the sentences in Counts 1 and 5 to run consecutively and the sentence in Count 8 to run concurrently with Counts 1 and 5, thereby imposing an aggregate sentence of 16 years imprisonment. The court also notified Grove of his reporting requirements as a Tier III sex offender.

{¶9} Grove now appeals his conviction and sentence, assigning three errors for our review:

I. The trial court erred by sentencing appellant to multiple consecutive sentences by failing to engage in the three step analysis required by R.C. 2929.14(C) and the supporting case law.

II. The appellant received ineffective assistance of counsel during his plea negotiations.

III.    The trial court erred by proceeding to sentence after the state did not

adhere to their portion of the plea agreement.

**Consecutive Sentences**

**{¶10}** In his first assignment of error, Grove alleges that the trial court failed to "engage in the three-step analysis" required under R.C. 2929.14(C).  In support, he essentially disputes the court's findings and argues that the record does not support the sentence.  He states that "consecutive sentences are not required to protect the public from future crime" because a ten-year prison term "more than adequately punishes the offender and protects the public"; the ten-year prison term is "completely proportional with the facts of this case" because the record does not support "a finding that [Grove's] crime was more serious, egregious, or unusual than any other crime of that nature" and Grove was convicted of attempted rape, "a much less serious crime" than rape, "which he did not plea to and was never convicted of"; and the incidents were not part of a course of conduct, but rather, they were independent crimes.

**{¶11}** R.C. 2953.08(G)(2) provides that when reviewing felony sentences, the appellate court may overturn the imposition of consecutive sentences where the reviewing court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."   Our review of a claim that the record does not support the trial court's findings under R.C. 2929.14(C)(4) is "'extremely deferential.'"   *State v. Balbi*, 8th Dist.

Cuyahoga No. 102321, 2015-Ohio-4075, ¶ 5, quoting *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.).

**{¶12}** In Ohio, there is a presumption that prison sentences should be served concurrently, unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to justify consecutive service of the prison terms. *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 3; R.C. 2929.41(A). R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22.

**{¶13}** Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, "and by doing so it affords notice to the

offender and to defense counsel." *Bonnell* at ¶ 29. "Findings," for these purposes, means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to determine that the record contains evidence to support the findings. *State v. Davis*, 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29.

{¶14} A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37. The failure to make consecutive sentence findings is contrary to law. *Balbi*, 8th Dist. Cuyahoga No. 102321, 2015-Ohio-4075, at ¶ 4.

{¶15} Here, the trial court made the requisite R.C. 2929.14(C)(4) findings in support of its imposition of consecutive sentences:

> 16 years is necessary to protect the public from future crime, to punish the offender, and the court finds it is not disproportionate to the seriousness of the offender's conduct, which is rape and attempted rape, and to the danger that he posed to the public, luring your victims to locations by use of electronic means, * * * the court also finds that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public. You have had domestic violence, assault, another assault as a

juvenile, disorderly conduct as a juvenile. You've had disorderly conduct, burglary, part of this case all in your past, and you're only 20 years old.

**{¶16}** Prior to making the consecutive sentence findings, the court heard statements from defense counsel, who noted that Grove has been

> on [social security income] for intelligence problems since he's been five years old. He went to Northcoast. * * * He was determined to be a malingerer. * * * Dr. Fabian interviewed him and concurred with the Northcoast psychiatrist, and I think this goes into the limited intelligence that this defendant has in trying to converse with people and chooses to act that out.

Counsel then requested the court impose the agreed recommended sentence of ten years imprisonment. Thereafter, Grove offered an apology to his victims.

**{¶17}** The father of one of the victims then addressed the court, explaining the pain that he and his daughter have experienced due to Grove's actions. He offered his forgiveness but explained that he "still carr[ies] the pain" in wondering if he is doing enough as a father. Thereafter, Detective Buck Kidd, one of the investigating officers provided the court with additional details regarding the incidents involving both victims. He explained that one of the victims had initially recanted her statement to the police because she was "threatened and beaten up by people [on Grove's] behalf." Finally, the state explained to the court that Victim 2 did not wish to come to court for the sentencing because she was "greatly affected by what happened," and her reason for recanting her statement to the police was "based upon fear."

**{¶18}** The court then addressed Grove, noting the reports prepared by the court psychiatric clinic, Northcoast, and an independent psychologist. The court stated that the court psychiatric clinic reported that Grove "may have some desire to avoid prison by going to a mental hospital and thus may have exaggerated some symptoms. He currently does not appear sufficiently capable of cooperating." The court then considered Northcoast's report that found Grove was "exaggerating or feigning his ability to learn about the case and how the court works." As indicated by the court, the report further stated as follows:

> His score on the test of malingered memory showed that he deliberately chose incorrect answers in order to present himself a memory impaired. He also reported symptoms of mental illness and psychotic symptom related to being traumatized by witnessing Hurricane Katrina. This information contradicts collateral information indicating that Mr. Grove has never been in the area of the Hurricane Katrina disaster. He also endorsed combinations of symptoms that very rarely, if ever, occur together, and his self-report was inconsistent with his behavior during the assessment. * * * The Miller Forensic Assessment of Symptoms was strongly suggestive of malingering.

**{¶19}** Finally, the court noted that it found Grove's "malingering and [his] attempts to manipulate" the court and the process to be "gravely disturbing * * * and indicative of the manipulation that [he] exercised in the committing of this case."

**{¶20}** In light of the foregoing, we conclude that the trial court made the appropriate consecutive sentence findings and it engaged in the analysis required under R.C. 2929.14(C)(4). Further, we cannot "clearly and convincingly" find that the record does not support the court's findings.

**{¶21}** Grove claims that his actions were "independent crimes" and the court failed to find that his actions were committed as a "course of conduct." However, R.C. 2929.14(C)(4) requires the court find that *either* the offender committed the offenses as part of a course of conduct *or* that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. *See* R.C. 2929.14(C)(4)(a)-(c). The trial court in this case did, in fact, find that Grove's history of criminal conduct demonstrated the need for consecutive sentences because it noted Grove's history of domestic violence, assault, burglary, and disorderly conduct.

**{¶22}** Additionally, Grove asserts that the court incorrectly sentenced him on rape, rather than attempted rape, "a much less serious crime." However, Grove's assertion is incorrect. Grove was convicted of rape in Count 1 (Victim 1) and attempted rape in Count 5 (Victim 2), and the court sentenced him on both offenses. And the trial court did, indeed, find both crimes to be very serious when it found that luring young victims to a certain location by the use of electronic means was dangerous and manipulative.

**{¶23}** Grove's first assignment of error is overruled.

## Ineffective Assistance of Counsel

{¶24} In his second assignment of error, Grove alleges that he received ineffective assistance of counsel during his plea negotiations. In support of his argument, Grove claims that prior to his plea, he attempted to hire new counsel because he had "substantial differences" with original counsel. Grove states, however, that new counsel was unavailable for the plea and his motion to continue the plea hearing was denied. Grove also argues that his original counsel told him that he would "die in prison with no defense for the charges if he did not enter into a plea." He concedes that this alleged information is not in the record but it "reinforces the lack of voluntariness" of his plea, and therefore, he received ineffective assistance of counsel.

{¶25} In order to establish a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance was deficient in some aspect of his representation and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768 (1990). Under *Strickland*, our scrutiny of an attorney's representation must be highly deferential, and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 689. In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶26} In proving ineffective assistance in the context of a guilty plea, the defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and he would have insisted on going to trial. *State v. Wright*, 8th Dist. Cuyahoga No. 98345, 2013-Ohio-936, ¶ 12. Generally, a guilty plea waives all appealable errors that may have occurred in the trial court, unless the errors precluded the defendant from knowingly, intelligently, and voluntarily entering a guilty plea. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 14; *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991). A claim of ineffective assistance of counsel is therefore waived by a guilty plea, unless the ineffective assistance of counsel precluded the defendant from knowingly, intelligently, and voluntarily entering a guilty plea. *Geraci.*

{¶27} "'A failure by counsel to provide advice [which impairs the knowing and voluntary nature of the plea] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea.'" *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5, quoting *United States v. Broce*, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

{¶28} We note, initially, that Grove's claims rely on statements made outside of the record. There is no evidence in the record of "substantial differences" Grove had with his trial counsel, trial counsel's allegedly improper legal advice or improper inducement (that Grove would "die in prison with no defense for the charges if he did not

enter into a plea"), or of the purported effect of these differences or advice on his guilty plea. Alleged statements or purported evidence made outside of the record are not properly considered on a direct appeal. *State v. Peak*, 8th Dist. Cuyahoga No. 102850, 2015-Ohio-4702, ¶ 20; *State v. Johnson*, 2015-Ohio-96, 27 N.E.3d, ¶ 53 (8th Dist.) (ineffective assistance of counsel claim that would require proof outside of the record is not appropriately considered on a direct appeal).

{¶29} Furthermore, there is nothing in the record that demonstrates counsel's deficient performance or counsel's failure to provide advice that would impair the knowing and voluntary nature of Grove's plea. Rather, the record reflects that Grove's guilty pleas were knowingly, intelligently, and voluntarily made.

{¶30} During the court's Crim.R. 11 colloquy with Grove, the court ensured that Grove was not under the influence of any drugs or medication that would impair his understanding of the proceedings, and it inquired of Grove's education. Thereafter, the court advised Grove of his constitutional rights and explained the charges to which he was pleading guilty, the maximum penalty of the charges (which the court explained was a combined 31½ years incarceration), and the effect of his plea. The court also explained that it could immediately proceed to judgment and sentence following his plea. Grove repeatedly indicated that he understood. The court inquired whether there had been any threats, promises, or inducements made in an effort to cause Grove to enter his plea, to which Grove replied in the negative.

{¶31} The court specifically advised Grove that his attorneys recommended a sentence of ten-years imprisonment, and Grove indicated that he understood. The court asked Grove if he agreed with the recommendation, to which he replied, "Yes." The court then advised Grove that the recommended sentence is not binding upon the court and that the court could, in fact, impose more time or less time than recommended. Grove stated that he understood.

{¶32} Furthermore, the court asked Grove, "Is there anything about this case or these proceedings [that] you do not understand?" Grove replied, "No." The court also inquired whether he was satisfied with his counsel during the plea process, to which Grove replied in the affirmative. Finally, there is no indication in the record that Grove expressed confusion or hesitation at any time during the plea hearing.

{¶33} We therefore do not find that Grove received ineffective assistance of counsel during the plea proceedings, and he entered his plea knowingly, intelligently, and voluntarily.

{¶34} Grove's second assignment of error is overruled.

### Enforcement of the Plea Agreement

{¶35} In his third assignment of error, Grove claims that the court erred in proceeding to sentencing where the state failed to adhere to its portion of the plea agreement. In support of this argument, Grove alleges that the state agreed to a recommended sentence of ten-years imprisonment; however, it breached that agreement when the investigating detective addressed the court and when the prosecutor provided an

additional statement regarding the second victim. He claims that the statements were provided only to inflame the court and is therefore a breach.

{¶36} A plea agreement is a contract between the state and a criminal defendant and is subject to contract-law principles. *State v. Butts*, 112 Ohio App.3d 683, 686, 679 N.E.2d 1170 (8th Dist.1996); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.1986). The terms of a plea agreement must therefore be explicit. *State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892, ¶ 11. Where the state breaches a plea agreement, the defendant has the option to withdraw his plea or seek specific performance. *State v. Brunning*, 8th Dist. Cuyahoga No. 95376, 2013-Ohio-930, ¶ 9; *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

{¶37} The trial court is vested with wide discretion in implementing a plea agreement. *State v. Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261, ¶ 112, citing *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13 (5th Dist.). And the court is not obligated to follow the negotiated plea entered into between the state and the defendant. *Dunbar.* In fact, "[a] trial court does not err by imposing a sentence greater than 'that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" *Buchanan* at ¶ 13, quoting *State v. Pettiford*, 12th Dist. Fayette No. CA2001-08-014, 2002-Ohio-1914, citing *State v. Darmour*, 38 Ohio App.3d 160, 529 N.E.2d 208 (8th Dist.1987).

{¶38} At the plea hearing in this case, the assistant prosecutor presented the plea agreement to the court and stated that "as part of this plea, the defendant and the state have agreed to recommend to the court * * * an aggregate sentence of 10 years on this case."  The state also advised the court that no other threats or promises had been made in order to induce Grove into changing his plea.  Defense counsel agreed.  And the court noted the recommendation during its colloquy with Grove.

{¶39} At the sentencing hearing held one month later, the court reiterated the parties' agreed recommended sentence and then addressed a matter contained in the PSI. Thereafter, the court provided the defense an opportunity to make a statement prior to the court's imposition of the sentence.  As previously indicated in this opinion, defense counsel addressed the court, noting the various psychological examinations conducted, and offered Grove's "limited intelligence" as mitigation for his offenses.  Counsel then requested the court impose the agreed recommended ten-year prison sentence, and Grove offered an apology to his victims.

{¶40} The court then inquired whether the state wished to make a statement.  At that time, the father of one of the victim's addressed the court, explaining the pain that he and his daughter have experienced due to Grove's actions.  The state advised the court that Detective Kidd, one of the investigating officers, was also present in the courtroom and wished to address the court.  Detective Kidd provided additional information concerning his investigation of Grove, including a victim's recantation out of fear and the discovery of additional victims.  Defense counsel objected to the detective's statement,

claiming the state was "backtracking" on the plea agreement because the detective's statement was "done not in support of the 10-year sentence * * * but to inflame this court to give a sentence greater than 10 years."

{¶41} In response, the court advised defense counsel that it has "never, ever agreed to any recommended sentence in 23 years" and it further stated as follows:

> It would be almost unheard of that somebody out there could inflame me more than a defendant and the conduct of a defendant. I listen to victims, family members, law enforcement officers every day. You have been in my courtroom many times to know that what I look at is the conduct of a defendant. I expect all victims to be upset. I expect all law enforcement to be on a certain side. * * * It's the defendant and the defendant's conduct, character, record, etc. that concerns this court.

{¶42} Thereafter, the court offered defense counsel an opportunity to address which facts he deemed "pertinent or not." Defense counsel, however, declined. The state then added that it was not attempting to circumvent its recommendation, but it wished to make the court aware of all of the circumstances. In completing its statement, the state provided that the victim in Count 5 would not be attending the hearing, that she was "greatly affected" by Grove's actions, and that her recantation was based upon her fear. The state then reiterated its agreement with defense counsel:

> That being said, you know, we did reach an agreement and we made a recommendation to the court. And I understand that this court is free to

impose the sentence that it feels is supported by the revised code.   But this in no way [was] meant to circumvent the agreement I had with [defense counsel].

**{¶43}** In support of his argument that the state violated the plea agreement by attempting to influence the court with disparaging statements at sentencing, Grove cites to *State v. Ross*, 179 Ohio App.3d 45, 2008-Ohio-5388, 900 N.E.2d 678 (6th Dist.).   In *Ross*, the court determined that an agreement by the prosecution to stand silent, or take no position on the sentence, "restricts the government from attempting to influence the sentence by presenting the court with conjecture, opinion, or disparaging information already in the court's possession."   *Ross* at ¶ 14, citing *State v. Crump*, 3d Dist. Logan No. 8-04-24, 2005-Ohio-4451, ¶ 11.

**{¶44}** Here, however, there was no evidence in the record that the state agreed to stand silent.   Rather, the transcript of the plea hearing, which is the only evidence before this court of the specific terms of the plea agreement, provides that the state agreed to a recommended ten-year prison sentence.   In fact, the prosecutor reiterated this position several times during the hearing.   And when the prosecutor initially presented the plea agreement to the court, it advised the court that no other promises were made to Grove.

**{¶45}** Furthermore, efforts by the state to provide "relevant factual information or to correct misstatements are not tantamount to taking a position on the sentence and will not violate the plea agreement."   *Ross*, citing *Crump*.   In this case, in offering the detective's statement and the prosecutor's additional information concerning Victim 2's

recantation, which were not previously available to the court through the PSI, the state provided relevant factual information to the court before sentencing. There was no evidence that such statements were attempts to influence the sentence with disparaging information already in the court's possession, i.e. through the PSI. *See Ross*; *Crump*. Moreover, the prosecutor provided the additional statements only after the court provided both Grove and the state an opportunity to make statements. The court was free to inquire of the parties whether they wished to further address the court prior to the imposition of sentence.

{¶46} Finally, we note that even if we found that the prosecutor breached the agreement by offering additional statements at sentencing, the court expressly stated that it was not bound by the agreement reached by the parties (at plea hearing) and that it "never" agreed with recommended sentences and the additional comments had no effect on the court's sentence (at sentencing). Also, there is no evidence in the record to suggest that the court's sentence would have been any different had the court not received the statements.

{¶47} Grove's third assignment of error is overruled.

{¶48} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION ATTACHED)

MELODY J. STEWART, J., CONCURRING IN JUDGMENT ONLY:

{¶49} I agree with Grove that the state had an implied obligation to act in good faith with its sentencing recommendation, but I must reluctantly concur that no breach of that recommendation occurred because the state did not agree to stand silent at sentencing.

{¶50} The United States Supreme Court has indicated that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, the Ohio Supreme Court concluded that a plea bargain is contractual in nature and subject to principles of contract law. *Id.* at ¶ 21. The federal courts use these same contract principles to hold

that "when a prosecutor secures a plea with a promise, the promise must be upheld." *United States v. Jones*, 58 F.3d 688, 691 (D.C.Cir.1995). *See also United States v. Khan*, 920 F.2d 1100, 1105 (2d Cir.1990) (applying "implied obligation of good faith and fair dealing" to plea agreement); *United States v. Hawkins*, 274 F.3d 420, 430-431 (6th Cir.2001) ("Like all contracts, [a plea agreement] includes an implied obligation of good faith and fair dealing."); *Khan* at 1105 (applying "implied obligation of good faith and fair dealing" to plea agreement).

{¶51} Good faith is "'a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.'" *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443-444, 662 N.E.2d 1074 (1996), quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990).

{¶52} The state agreed to recommend that the court impose a ten-year sentence on Grove. It could, consistent with the express terms of its agreement, offer the court information to ensure that Grove would not receive less than ten years in prison. While the information the state offered may have gone beyond what was strictly necessary to ensure that the court did not impose less than ten years in prison, the state did not take opportunistic advantage in a way that could not have been contemplated at the time the parties entered their agreement.

{¶53} Notably, Grove did not insist that the state stand or remain silent as a term of the plea agreement. Had the state's silence been a part of the sentencing agreement, the state would have no basis for offering the information it offered at sentencing.

{¶54} Admittedly, there is no clear line in this case between what constitutes a good faith presentation of information designed to ensure that the court enters a sentence consistent with a recommendation and simple "piling on."[1] But for defense counsel, the takeaway from this case is that if counsel wants to ensure that the state does nothing that could be viewed as undermining an agreed upon sentence, the state's agreement to stand silent at sentencing must be made a part of the plea agreement.

---

[1] During sentencing, the court indicated that the state's alleged bad faith in offering additional facts was of no consequence because the court would not be bound by any sentencing recommendation and the state suggests that this militated against any prejudice to Grove. The United States Supreme Court has made it clear that the breach of a plea agreement is not dependent on whether the sentencing judge would have been influenced by the breached term of the plea agreement. *Santobello,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427.